# United States Court of Appeals
## For the First Circuit

No. 06-1558

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

MANUEL A. VEGA-SANTIAGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and DiClerico, Jr.,* Senior District Judge.

Johnny Rivera-Gonzáles for appellant.
Thomas F. Klumper, Assistant United States Attorney, with
whom Rosa Emilia Rodríquez-Vélez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, were on brief,
for appellee.

October 31, 2007

_____
* Of the District of New Hampshire, sitting by designation.

**LIPEZ, Circuit Judge**.  In 2005, a federal jury convicted Manuel Vega-Santiago ("Vega") of armed carjacking and related weapons charges.  The district court imposed two consecutive ten-year sentences.  On appeal, Vega contests his conviction on multiple grounds: the victims' identification of him was tainted and improperly admitted; the court erred in allowing testimony concerning his confession, which he claims was involuntarily given; the district court abused its discretion in reopening the case to allow the government to introduce additional evidence after he moved for a judgment of acquittal; and the evidence presented at his trial was insufficient to establish all elements of the charged offenses.  We find no merit in any of these claims.

Vega also challenges his sentence, arguing that it is unreasonable and that he was not given proper notice of the court's intent to impose a sentence above the Sentencing Guidelines' range.  This latter contention requires us to address an issue that has divided the circuits – whether the requirement in Federal Rule of Criminal Procedure 32(h) that a court give the parties "reasonable notice" of a contemplated departure from the Sentencing Guidelines applies post-Booker when a court is considering a sentence that varies from the Guidelines.

We conclude that Rule 32(h) applies to post-Booker variances, as well as to Guidelines departures.  We also conclude that, in the circumstances of this case, the notice and the term of

-2-

imprisonment were both reasonable. Thus, although we must remand for correction of the written judgment, which records an inaccurate sentence on one charge, we otherwise affirm the conviction and sentence.

**I.**

On the evening of September 6, 2005 Javier García-Toledo ("García") and Pedro Alarcón-Carrasquillo ("Alarcón") were confronted by an armed intruder in García's kitchen. The intruder – wearing black gloves, a black jacket, a black cap and a white shirt, and carrying a black bag of the style used to carry motorcycle helmets – brandished a gun and ordered the men to surrender their money and jewelry. Threatening to kill them, the intruder then demanded that García bring him the contents of his bedroom safe. While making these threats and demands, the intruder fired his gun in close proximity to the men. García initially believed he had been shot; however, the bullet missed him and lodged in the wall behind him. Shortly thereafter, García retrieved several pieces of jewelry from the safe but left his own firearm there, and he returned to the kitchen with the items.

Upon García's return, the intruder took the jewelry and asked whether García's car, a red Nissan 350Z, had a special alarm system. Ascertaining that it did not, the intruder demanded that García start the vehicle. The intruder then directed the men to

the bedroom. Shortly thereafter, García and Alarcón heard the sound of the car's engine moving away from the house.

Confident that the intruder was leaving, García retrieved his pistol from the bedroom safe and the men pursued the intruder, firing at the car as it backed down the driveway. Using Alarcón's truck, the men pursued the intruder through the streets. Meanwhile, they called 911 to report the robbery. Happening upon a patrol car at a nearby convenience store, the men stopped to explain the situation to the police. At the officers' suggestion, García surrendered his weapon.

While the men were speaking with the police, the officers received the news that a vehicle matching the description of García's Nissan had been found. García and Alarcón drove to the scene, followed by the police officers. As they approached the site where the car was abandoned, the men saw a group of officers interviewing someone; both men spontaneously identified that person, appellant Vega, as the intruder. A search of the vicinity uncovered a black motorcycle bag containing black gloves, a baseball cap, a black mask, a black shirt, and a .357-revolver with its serial number defaced and one bullet expended. The stolen items were also discovered nearby. Six .357-caliber bullets in a speed-loader were recovered from Vega's pocket; the bullets were of the same make as the bullets found in the revolver.

-4-

Vega was arrested on the spot by local police and subsequently was transferred to federal custody. On September 21, 2005, a grand jury returned a three-count indictment charging him with: (1) an armed carjacking, with intent to cause death or serious injury, in violation of 18 U.S.C. § 2119(1); (2) the use and possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) knowing possession of a firearm with an altered or obliterated serial number, in violation of 18 U.S.C. § 922(k). Vega pled not guilty on all counts.

Vega's trial commenced on November 8 and both sides completed their presentation of evidence that day. After the government rested, defense counsel filed a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, claiming that the prosecution had not adduced sufficient evidence from which a reasonable jury could conclude that Vega had committed the crime of carjacking. In particular, the defense asserted that the prosecution had not provided substantial evidence of the car's movement in interstate commerce, a jurisdictional requirement under 18 U.S.C. § 2119. The district court allowed the government to re-open its case the next morning for the narrow purpose of presenting testimony regarding where the car was manufactured. After that testimony, both sides delivered their closing arguments. That same day, the jury found Vega guilty on all counts.

-5-

The Presentence Investigation Report ("PSR") prepared in advance of the sentencing hearing noted that the second count, charging use of a firearm during the carjacking, carried a mandatory minimum ten-year sentence, to be imposed consecutively to any other term of imprisonment. Although the carjacking offense carried a maximum statutory penalty of fifteen years' imprisonment, Vega's offense level and criminal history produced an advisory Guidelines range of 57 to 71 months. The PSR included a victim impact statement in which both García and Alarcón expressed their desire that Vega receive the maximum sentence authorized by law. The victims emphasized that they were confronted in García's home, that they were forced to beg for their lives, that Vega showed little respect for their lives when he fired his gun so close to them that the gunpowder burned García's face, and that the event had caused both men continuing anxiety. The PSR noted that the probation officer had not "identified any information that would warrant a departure from the guidelines." Neither party objected to the PSR.

Shortly after the start of Vega's sentencing hearing, his counsel noted that Count Two – the § 924(c) firearms charge – required a ten-year term imposed consecutively to any other term of imprisonment resulting from the charged criminal activity, and he urged the court to impose a sentence at the bottom of the Guidelines range for the remaining offenses. In response, the

government pointed out that ten years was the statutory minimum for the § 924(c) charge and the court could go above it. Defense counsel, in turn, observed that the Guidelines provided for a ten-year consecutive sentence and that, if the government believed a higher sentence was warranted, it was required to give defendant advance notice. Counsel also argued that the court was obliged to give notice if it intended to go beyond the advisory Guidelines term, specifically invoking Federal Rule of Criminal Procedure 32(h).[1]

The court rejected the notice argument, explaining its view that Rule 32(h) applies only to formal "departures," which are based on specific provisions of the advisory Guidelines, and not to "variances" from the Guidelines based on the sentencing criteria set out in 18 U.S.C. § 3553(a).[2] After additional colloquy about

---

[1] Rule 32(h) provides:

Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

[2] The distinction between departures and variances was a result of the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which made the Sentencing Guidelines advisory rather than mandatory. Post-Booker, we review sentences for reasonableness based on various factors set out in 18 U.S.C. § 3553(a). The Guidelines nonetheless remain a starting point in sentencing, and courts may still justify sentences outside the recommended Guidelines range by reference to Guidelines "departure" provisions. When a court imposes a sentence outside the Guidelines

the adequacy of the Guidelines range in this case, including a statement from Alarcón reiterating the request that Vega receive "the greatest term possible," the court imposed a total sentence of twenty years: the ten-year mandatory minimum on the § 924(c) count (Count Two); an additional ten-year sentence on the carjacking count (Count One); and a sixty-month sentence for possessing a weapon with an obliterated serial number (Count Three), to be served concurrently with the carjacking term. The court explained that this variance from the Guidelines resulted from consideration of two of the factors listed in § 3553(a): the nature and circumstances of the offense and Vega's background. The court additionally ordered three years of supervised release. This appeal followed.

## II.

### A. Pretrial Identification

Vega contends that the circumstances under which the victims identified him as the perpetrator were so impermissibly suggestive as to taint the victims' subsequent identification testimony at trial, thereby denying him due process of law. See, e.g., Neil v. Biggers, 409 U.S. 188, 198 (1972) (explaining that "[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive

---

range based on its assessment of the section 3553(a) factors – without regard to specific Guidelines departure provisions – the deviation is considered a variance.

ones are condemned for the further reason that the increased chance of misidentification is gratuitous").  In particular, Vega claims that any identification by the victims should have occurred through a formal line-up including other individuals rather than at the site where the car was recovered, with Vega surrounded by police officers.  However, Vega filed no pretrial motion requesting suppression of the identification, as required by Federal Rule of Criminal Procedure 12(b)(3).[3]  Section 12(e) of the Rule states that the failure to file such a motion constitutes a waiver, absent a showing of good cause.  Vega asserts no cause that might justify such relief; we consider this issue waived.  United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998); United States v. Gomez-Benabe, 985 F.2d 607, 612 (1st Cir. 1993).

## B.  Voluntariness of Vega's Confession

Vega argues that the district court erred in admitting his confession into evidence, in violation of his Fifth Amendment right against self-incrimination, because the confession was not voluntarily given.  See Miranda v. Arizona, 384 U.S. 436, 476 (1966).  He also claims that his Sixth Amendment right to representation was violated because the confession occurred after the commencement of prosecution.  See Texas v. Cobb, 532 U.S. 162, 167-68 (2001).  The government counters that Vega was read his

---

[3] Rule 12(b)(3) identifies motions that "must be raised before trial" and includes motions to suppress evidence.

rights repeatedly, and knowingly and voluntarily chose to waive them.

In reviewing a district court's denial of a motion to suppress, we review its factual findings for clear error and its "ultimate Fourth Amendment conclusions de novo." United States v. Paradis, 351 F.3d 21, 24 (1st Cir. 2003) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)); see also United States v. Materas, 483 F.3d 27, 32 (1st Cir. 2007). We reverse only if no reasonable view of the evidence supports the district court's decision. Materas, 483 F.3d at 32. We find no error in the district court's determination that Vega voluntarily waived his rights.

During Vega's trial, the district court conducted a suppression hearing to determine the admissibility of his confession. The officer who detained Vega testified that he read the Miranda warnings at the scene where the car was recovered. At that time, Vega refused to sign a waiver card and did not request an attorney. The police officer who took Vega into custody testified that, when given an opportunity to make a phone call, Vega called "a client . . . whose car he fixes," rather than an attorney. The FBI agent who interrogated Vega on June 7 testified that he read Vega his rights and that Vega signed a form acknowledging that he understood and agreed to waive his rights.

-10-

The FBI agent testified that, after signing this form, Vega confessed to the robbery.

At the same suppression hearing, Vega testified that he had never been read his rights, that he repeatedly asked for an attorney, and that the officer who took him into custody "put the [speed-loader] in his hand and he struck me."[4]  On cross-examination, Vega admitted that the FBI agent who interrogated him never threatened him or struck him.  The following colloquy regarding Vega's waiver ensued:

> Prosecutor:  Isn't it [] a fact that you were requested to read that document by yourself?
>
> Vega: Yes, I read it.  I read it from this point to this point . . . .  That is where I read it to.
>
> Prosecutor: You did understand that you had a right to an attorney; isn't that right?
>
> Vega: Yes.
>
> Prosecutor: And you were also told and you read that you had a right to remain silent?
>
> Vega: Yes.
>
> \*\*\*
>
> Prosecutor: And you were told that you had a right to consult with an attorney and to seek his advice, didn't you?

---

[4] When asked if "the fact that you were struck in the face while you were in police custody[] play[ed] any part into[sic] your decision to answer [the FBI agent's] questions," Vega responded: "Well, I don't know.  It seemed like they were harassing me.  They had already hit me in the face."  Vega also acknowledged that the police officer who allegedly hit him was not present during his interrogation.

Vega: Nope.

Prosecutor: Didn't you read it?

Vega: Well, it says there, but they didn't give me the opportunity to have the lawyer there with me.

Prosecutor: No. My question is did you read that and if you did, did you understand what it said?

Vega: Yes.

Prosecutor: And you also understood . . . that if you were asked questions and you decided to answer them, that at some point if you didn't want to go on, you could quit and nothing would happen. . . .

Vega: I don't remember that.

Prosecutor: Isn't it a fact that there came a point in time when you were asked to answer who was the person accompanying you for this robbery and you decided not to answer any more questions.

Vega: I don't remember.

At the conclusion of the suppression hearing, the court found Vega "extremely evasive," and it gave him "no credibility on the issue of his voluntariness." Our review of a district court's credibility ruling is highly deferential, United States v. Ivery, 427 F.3d 69, 72 (1st Cir. 2005), and we find no basis for second-guessing the court's assessment of Vega's behavior. Its credibility determination was supported by the signed waiver and by the testimony of the two police officers and the FBI agent that they had read Vega his rights. We thus find no error in the court's ultimate conclusion that Vega's confession was voluntary and, therefore, admissible.

## C. Reopening of the Evidence

Vega claims that the district court erred when it allowed the government to introduce additional evidence on a jurisdictional element of the carjacking offense after the government rested its case and Vega moved for a judgment of acquittal. We review the district court's decision to reopen after the close of evidence for abuse of discretion. United States v. Santana, 175 F.3d 57, 64 (1st Cir. 1999) (noting that review is for abuse of discretion even when the court "reopens the case on its own initiative, rather than on the motion of one of the parties"); United States v. Pandozzi, 878 F.2d 1526, 1534 (1st Cir. 1989) (finding no abuse of discretion where court allowed government to reopen). In evaluating the court's exercise of its discretion, we consider whether the value of the additional evidence outweighed the potential for disruption or prejudice in the proceedings, and if so, whether the government had a reasonable excuse for failing to present the testimony during its case-in-chief. See United States v. Peterson, 233 F.3d 101, 106 (1st Cir. 2000).

Here the court agreed to reopen the case to allow the government to present evidence that García's Nissan 350Z was not manufactured in Puerto Rico. To establish the crime of carjacking, the government must prove that the vehicle in question "has been transported, shipped, or received in interstate or foreign commerce," 18 U.S.C. § 2119. Vega contended that the government

-13-

had not introduced any such evidence and persisted in his request for a judgment of acquittal on this basis even though the court indicated that it might take judicial notice of the fact that no automobiles are manufactured on the island of Puerto Rico (meaning that all vehicles on the island must have traveled in interstate commerce). The court repeatedly asked Vega if he wanted to insist on evidence related to this element, and his counsel replied in the affirmative, stating: "Your Honor, I am taking whatever issues I can find." The government suggested that García's testimony that he believed the car was manufactured in "Japan or China, I don't know," might be sufficient, but was unsure. The court then reopened for the limited purpose of allowing testimony as to the car's place of manufacture.

We find no abuse of discretion in the court's decision to reopen the case. The particular evidence presented was testimony by an FBI agent who had secured a document from the internet showing that the vehicle had not been manufactured in Puerto Rico and thus had moved in interstate commerce. The document had been provided in discovery to Vega before his trial began, and Vega articulates no way in which its admission either disrupted or prejudiced the proceedings. See United States v. Rouse, 111 F.3d 561, 573 (8th Cir. 1997) (finding no abuse of discretion where the trial court allowed the government to reopen its case to establish a jurisdictional fact that was not a surprise to defendants);

-14-

<u>United States</u> v. <u>Alderete</u>, 614 F.2d 726, 727 (10th Cir. 1980) (same).   Although the government did not provide a compelling explanation for its failure to introduce the interstate commerce evidence in its primary case, the court explained:

> I have a responsibility, I think, if it were intent, if it were something that he acted knowingly, willfully, if it were a major element of the offense, you would have walked out of here with a Rule 29, without a question.
>
> But an issue like that, when everybody knows that a Nissan is not manufactured in Puerto Rico, that I could take judicial notice of that?   [The government] should have presented the evidence.  I am not excusing you for not doing it.   He is an experienced prosecutor, and he had all the obligation in the world to do it, and he did not.
>
> But I do think I have a major obligation to do the right thing, and the right thing is to reopen.

Thus, the court recognized that the government should have presented the evidence earlier, but found beyond dispute that the car was manufactured outside Puerto Rico.   It also weighed the evidence's probativeness against the potential prejudice, which it rightly viewed as low, and decided to admit the evidence.   We easily conclude that the court did not abuse its discretion with its reopening decision.

## D. Sufficiency of the Evidence

Vega argues that the government did not meet its burden of providing sufficient evidence from which a reasonable jury could

-15-

find that he committed the carjacking. In particular, he claims that the government "did not present a single piece of physical evidence" to corroborate the victims' identification of appellant at trial.

We review challenges to the sufficiency of the evidence de novo, evaluating the evidence in the light most favorable to the prosecution and drawing all reasonable evidentiary and credibility inferences in favor of the verdict. United States v. Beltrán, ___ F.3d ___, 2007 WL 2685157, at *1 (1st Cir. Sept. 14, 2007). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the conviction stands. Id.; United States v. Grace, 367 F.3d 29, 34 (1st Cir. 2004).[5]

Vega's challenge fails to undermine the jury's verdict. First, as he conceded at oral argument, physical evidence is not a prerequisite to a finding of guilt. See, e.g., United States v. Peña-Lora, 225 F.3d 17, 23-24 (1st Cir. 2000) (explaining that the uncorroborated testimony of an accomplice is a sufficient basis on which the court may uphold a conviction). Indeed, it is likely that the victims' identification of Vega as the perpetrator and his confession would be sufficient to sustain his conviction. See

---

[5] The government urges us to consider this issue waived because Vega has not presented a developed argument contesting the elements of the offenses on which he was convicted. Finding that Vega does not succeed on the merits of this claim, we decline to decide the waiver issue.

<u>United States</u> v. <u>Lebrón-Cepeda</u>, 324 F.3d 52, 58 (1st Cir. 2003) (suggesting that victim testimony was sufficient to dispel any doubts arising from defendant's conflicting confessions).

However, the government also presented substantial physical evidence that provided circumstantial corroboration of Vega's involvement in the crimes. For example, Vega was found near the site of the abandoned stolen car, items matching those stolen from the scene were found near him, a black motorcycle helmet bag with more ammunition and a gun were found in the vicinity, Vega matched the description the victims had given the police prior to their arrival at the scene of the stolen car, and he was carrying a speed-loader with ammunition that matched both the caliber of the gun used in the carjacking and the type of ammunition found in the gun. In short, the government presented ample evidence from which a reasonable jury could find beyond a reasonable doubt that Vega committed the carjacking.

**III.**

Vega also appeals his sentence on three grounds: (1) that the written judgment is inconsistent with the district court's oral pronouncement at sentencing; (2) that he was not given sufficient notice of a variance from the Guidelines range as required by Federal Rule of Criminal Procedure 32(h), U.S.S.G. § 6A1.4, and

Local Rule 132(b)(4);[6] and (3) that the sentence itself was unreasonable.

## A. Disparity Between the Sentence Delivered Orally and By Order

Vega urges us to remand for a correction of his sentence on the gun possession charge. Although the PSR stated that the statutory maximum term for a violation of 18 U.S.C. § 922(k) is sixty months, and the court stated at the sentencing hearing that it was imposing a sixty-month term of imprisonment, the written judgment assigns a sentence of 120 months for that offense. Where the oral pronouncement of sentence differs from the written judgment, this court has generally recognized the former. See United States v. Muniz, 49 F.3d 36, 42 n.5 (1st Cir. 1995). Moreover, given the statutory maximum, see 18 U.S.C. 924(a)(1)(B), the court was limited to imposing a sixty-month term on this count. The government agrees that the written order is in error. We therefore remand to the district court to conform the written judgment to the court's oral pronouncement.

---

[6] Guidelines § 6A1.4 contains language virtually identical to Federal Rule of Criminal Procedure 32(h). Puerto Rico Local Rule 132(b)(4) requires that parties seeking a sentence departure or adjustment "submit a written motion, specifying the grounds and legal authority in support of said request for departure and/or adjustment . . . no later than ten (10) days prior to the scheduled sentencing hearing . . . ."

## B. Notice of Deviation From the Guidelines

### 1. Notice requirement

As described above, in sentencing Vega on the carjacking charge, the district court went outside the recommended Guidelines range of 57 to 71 months and imposed a ten-year term of imprisonment – more than a four-year increase above the high end of the range. The court recognized its responsibility to consider the factors set forth in 18 U.S.C. § 3553(a),[7] and it primarily justified the sentence based on the particularly egregious circumstances of the crime:

> This is not a regular car jacking. We are not talking about an individual who is sitting [at] a traffic light in the middle of town and someone just opens the door and takes his car. Take a look at what happened here. This man – These two persons were sharing socially in the privacy of the home of one of them. And look what happened. Somebody erupts into the house with a gun in hand. We know what happened. . . . The car jacking is secondary to the main event that almost caused the life of one or . . . two of these people.
>
> We are talking about a home invasion. It is more than a burglary. It is more than a robbery, a home robbery. It is unbelievable. And it results in a car jacking and the

---

[7] These factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and the kinds of sentences available.

-19-

shooting inside the house for no reason whatsoever.

The court also noted Vega's previous "brushes with the law which included violent crime allegations for which he was not convicted, for whatever reason. But that is a fact." The court concluded that, taking into account the relevant factors, "one is left with the impression that the range proposed by these guidelines for the particular circumstances of this case is not enough to meet the necessary criteria to reflect how serious this offense was and how just punishment should be provided."

Vega argues that this non-Guidelines sentence was impermissible because the district court failed to comply with Federal Rule of Criminal Procedure 32(h), which requires a sentencing court to give the parties reasonable notice that it is considering a departure from the Guidelines as well as the specific grounds for that departure. See supra note 1. The rule codified the Supreme Court's holding in Burns v. United States, 501 U.S. 129 (1991), that such notice is necessary to ensure "full adversary testing of the issues relevant to a Guidelines sentence," id. at 135. The Court explained that, "[b]ecause the Guidelines place essentially no limit on the number of potential factors that may warrant a departure, no one is in a position to guess when or on what grounds a district court might depart, much less to 'comment'

on such a possibility in a coherent way." Id. at 136-37 (internal

citation omitted). Thus, without notice,

> parties will address possible sua sponte
> departures in a random and wasteful way by
> trying to anticipate and negate every
> conceivable ground on which the district court
> might choose to depart on its own initiative.
> At worst, and more likely, the parties will
> not even try to anticipate such a development;
> where neither the presentence report nor the
> attorney for the Government has suggested a
> ground for upward departure, defense counsel
> might be reluctant to suggest such a
> possibility to the district court, even for
> the purpose of rebutting it. In every case in
> which the parties fail to anticipate an
> unannounced and uninvited departure by the
> district court, a critical sentencing
> determination will go untested by the
> adversarial process contemplated by Rule 32
> and the Guidelines.

Id. at 137.

The language in Burns, like the language of Rule 32,

applies specifically to Guidelines departures because, at the time

the Supreme Court articulated the notice requirement, the only type

of non-Guidelines sentence available was one based on the

rationales for departure sanctioned by the Guidelines. See, e.g.,

§§ 4A1.3, 5K1.1-2.23.[8] The shift from a mandatory to an advisory

---

[8] Section 4A1.3 allows upward departures, inter alia, "[i]f
reliable information indicates that the defendant's criminal
history category substantially under-represents the seriousness of
the defendant's criminal history." Section 5 specifies various
possible grounds for departure, including when a defendant provides
substantial assistance to authorities, § 5K1.1, when an offender
characteristic not typically furnishing a basis for a departure "is
present to an exceptional degree," § 5K2.0(a)(4), and "[i]f

Guidelines scheme post-Booker, and the corresponding addition of "variances" to sentencing parlance, has generated a debate among the circuits as to "whether and to what extent" Rule 32(h) and the rationale of Burns retain force. See United States v. Wallace, 461 F.3d 15, 44 n.14 (1st Cir. 2006). Our court has not explicitly ruled on the question, although we observed in Wallace that "it is clearly the better practice – whether or not the legal requirement survives Booker – for the court to provide notice to defendants when relying on departure provisions in the advisory Guidelines not previously identified in the PSR or in a party's pre-hearing submission." Id.

It appears that only the Seventh Circuit has held that Rule 32 no longer requires notice even for departures, having concluded that, after Booker, "the concept of departures [is] 'obsolete' and 'beside the point.'" United States v. Walker, 447 F.3d 999, 1006 (7th Cir. 2006). Rule 32(h) remains in effect, however, and the government has in other cases accepted its continuing applicability. See, e.g., United States v. Blatstein, 482 F.3d 725, 731 (4th Cir. 2007) (finding plain error in favor of government where government argued that "sentencing court erred in

significant physical injury resulted," § 5K2.2. The Guidelines' Chapter 1 introduction states that the grounds for departure listed in the Guidelines are "not exhaustive" and "that there may be other grounds for departure that are not mentioned." U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). However, the Sentencing Commission anticipated that such cases would be "highly unusual." Id.

imposing a variance sentence without providing reasonable notice of its intent to do so"); United States v. Anati, 457 F.3d 233, 236 n.1 (2d Cir. 2006);[9] United States v. Vampire Nation, 451 F.3d 189, 195 (3rd Cir. 2006).[10]   The remaining nine circuits that have thus far addressed the issue have considered whether Rule 32(h) extends to sentencing variances, as well as departures, and they have split five to four.  The Third, Fifth, Eighth and Eleventh circuits hold that the Rule is limited to departures[11]; the Second, Fourth, Sixth, Ninth and Tenth hold that it is not, and have applied the notice

---

[9] In Anati, the court noted that the government had "indicated its agreement with Anati's position that the District Court was required to give notice prior to imposing a non-Guidelines sentence."  457 F.3d at 236 n.1.  That concession does not appear limited to departures, as distinguished from variances.

[10] Although the defendant Vampire Nation conceded at oral argument that Rule 32(h) did not apply because the sentence at issue was a variance rather than a departure, the government "took the position that district courts should provide advance notice of their intent to vary from a Guidelines sentencing range, regardless of whether that variance is upward or downward."  451 F.3d at 195. Interestingly, in Walker, the government filed a letter after oral argument, see Fed. R. App. P. 28(j), seeking "to withdraw its argument concerning the inapplicability of Rule 32(h) to out-of-Guidelines sentences post-Booker" because it was contrary to Department of Justice policy.  Walker, 447 F.3d at 1007 n.7. Department policy at that time recognized that "'due process concerns may still require a district court to provide notice and opportunity to be heard on any contemplated departure or imposition of a non-Guideline sentence,'" Id. (quoting 28(j) letter).

[11] See United States v. Vampire Nation, 451 F.3d 189, 195 (3d Cir. 2006); United States v. Mejia-Huerta, 480 F.3d 713, 722 (5th Cir. 2007), petition for cert. filed, 75 U.S.L.W. 3585 (U.S. April 18, 2007) (No. 06-1381); United States v. Long Soldier, 431 F.3d 1120, 1122 (8th Cir. 2005); United States v. Irizarry, 458 F.3d 1208, 1212 (11th Cir. 2006), petition for cert. filed, No. 06-7517 (Oct. 26, 2006).

requirement to variances as well as departures.[12]  For the reasons we elaborate below, we think the better view is that the notice requirement survives <u>Booker</u> and applies to any non-Guidelines sentence – whether imposed as a departure or as a variance.

         The circuits that have concluded otherwise rely most heavily on the rationale that the element of unfair surprise that underlay <u>Burns</u> and Rule 32(h) is no longer present because defendants are on notice post-<u>Booker</u> that sentencing courts have discretion to consider any of the factors specified in § 3553(a). <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Mejia-Huerta</u>, 480 F.3d 713, 722 (5th Cir. 2007), <u>petition for cert. filed</u>, 75 U.S.L.W. 3585 (U.S. April 18, 2007) (No. 06-1381) ("This is not an instance when the sentencing court unexpectedly departed from a binding Guidelines range.  Rather, the district court predictably did what any district court is empowered to do post-<u>Booker</u>."); <u>United States</u> v. <u>Irizarry</u>, 458 F.3d 1208, 1212 (11th Cir. 2006), <u>petition for cert. filed</u>, No. 06-7517 (Oct. 26, 2006) (similar); <u>Vampire Nation</u>, 451 F.3d at 196 ("Because defendants are aware that district courts will consider the factors set forth in § 3553(a), we believe the

---

[12] <u>See</u> <u>United States</u> v. <u>Anati</u>, 457 F.3d 233, 237 (2d Cir. 2006); <u>United States</u> v. <u>Davenport</u>, 445 F.3d 366, 371 (4th Cir. 2006); <u>United States</u> v. <u>Cousins</u>, 469 F.3d 572, 580 (6th Cir. 2006); <u>United States</u> v. <u>Evans-Martinez</u>, 448 F.3d 1163, 1164 (9th Cir. 2006); <u>United States</u> v. <u>Atencio</u>, 476 F.3d 1099, 1104 (10th Cir. 2007).

element of 'unfair surprise' that <u>Burns</u> sought to eliminate is not present.").

We find this distinction based on lack of surprise unpersuasive. Like the other circuits that have found the Rule 32(h) notice requirement equally applicable to all non-Guidelines sentences, we fail to see how the concern for unfair surprise underlying the Supreme Court's decision in <u>Burns</u> is alleviated in the context of post-<u>Booker</u> variances. The Tenth Circuit has aptly noted the equivalence of the two settings: "Defendants are, indeed, constructively 'on notice' of § 3553(a) factors post-<u>Booker</u>. Under the previous sentencing regime, however, they were equally aware of the specific circumstances for departure under the Guidelines." <u>United States</u> v. <u>Atencio</u>, 476 F.3d 1099, 1104 (10th Cir. 2007); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Cousins</u>, 469 F.3d 572, 580 (6th Cir. 2006) ("We cannot discern any distinction between the departure criteria and the § 3553(a) factors, in terms of the notice that they provide to parties preparing for sentencing.").[13]

Moreover, general knowledge of the § 3553(a) factors will not eliminate the Court's core concern in <u>Burns</u> – that parties have the opportunity to expose the <u>particular</u> factors under consideration to "full adversary testing." The Guidelines remain

_____

[13] Although departures could be based on grounds not explicitly listed in the Guidelines, the Sentencing Commission, as noted <u>supra</u>, anticipated that such instances would be "highly unusual."

the starting point for all sentencing post-<u>Booker</u>, and a court's decision to deviate from the Guidelines range – whether up or down, by departure or variance – still requires identification of distinguishing factors that warrant divergence from that baseline. <u>See</u> <u>United States</u> v. <u>Smith</u>, 445 F.3d 1, 4 (1st Cir. 2006) ("[A] district court should normally begin with a guideline calculation, and . . . after considering departures, the district court should decide whether 'other factors' (beyond the guidelines) warranted an ultimate sentence above or below the guideline range." (citing <u>United States</u> v. <u>Jiménez-Beltre</u>, 440 F.3d 514, 518 (1st Cir. 2006) (en banc))). The Court in <u>Burns</u> recognized that the parties' ability to respond meaningfully to the considerations deemed important by the district court depends upon knowing what they are in advance. We fail to see how the need for notice is any less acute when the court relies on the factors identified in § 3553(a) than when it relies on the departure criteria set out in the Guidelines.

> "[N]otice of an intent to depart or vary from the guidelines remains a critical part of sentencing post-Booker," because "[t]here is 'essentially no limit on the number of potential factors that may warrant a departure' or a variance, and neither the defendant nor the Government 'is in a position to guess when or on what grounds a district court might depart' or vary from the guidelines."

<u>Blatstein</u>, 482 F.3d at 732 (quoting <u>Davenport</u>, 445 F.3d at 371

(quoting Burns, 501 U.S. at 136-37)); see also Anati, 457 F.3d at 236-37.

Indeed, the Second Circuit invoked the more general subsection of Rule 32 on which the Supreme Court based its notice requirement – 32(i)(1)(C) – in the course of extending the Burns holding to variances.[14]   See Anati, 457 F.3d at 236; see also Blatstein, 482 F.3d at 731-33 (noting the origin of Rule 32(h) and referring generally to "Rule 32 notice error").  That provision obliges a sentencing court to "allow the parties' attorneys to comment on . . . matters relating to an appropriate sentence."  The Supreme Court concluded that Congress could not have intended district courts to depart from the Guidelines sua sponte "without first affording notice to the parties" because such a reading of Rule 32(i)(1)(C) would "render[] meaningless the parties' express right 'to comment upon . . . matters relating to the appropriate sentence."  Burns, 501 U.S. at 136.  In our view, this analysis is equally applicable to variances; thus, even without flexibly applying Rule 32(h), whose language explicitly refers to departures, the requirement to provide advance notice for variances can be anchored in Rule 32.

In sum, we join the circuits that require reasonable notice that a court is contemplating a sentence outside the

---

[14] When the Supreme Court decided Burns, the provision was numbered Rule 32(a)(1).  See Burns, 501 U.S. at 135.

-27-

Guidelines range, whether by means of departure or variance. To hold otherwise would be "inconsistent with Rule 32's purpose of promoting focused, adversarial resolution of the legal and factual issues relevant to" sentencing, id. at 137.

2. The Contours of Reasonable Notice

Our conclusion that Rule 32(h) applies to sentencing variances is only the first step in determining whether Vega is entitled to resentencing. The government contends that, even if notice of a contemplated variance is required under Rule 32(h), any error arising from the failure to notify in this instance was harmless. The government points out that the PSR contained statements from García and Alarcón advocating for "the greatest term possible" for Vega and that defense counsel was given an opportunity at the sentencing hearing to argue against a non-Guidelines sentence. The government further notes that Vega did not request a continuance in order to prepare a more complete response. In sum, the government's view is that Vega suffered no harm from the lack of prehearing notice of a possible departure or variance.

However, we need not reach the question of harmless error. In determining whether the district court committed any error on the notice issue, we must examine the nature and timing of the notice that is required. The Supreme Court in Burns explicitly left unanswered "the question of the timing of the reasonable

notice required by Rule 32," 501 U.S. at 139 n.6, and some discussion of the kind of notice that must be provided also is warranted. As we explain, our consideration of these factors leads us to conclude that, in the circumstances of this case, no error occurred.

a. Kind of Notice

As noted, the government suggests that Vega did, in fact, have notice that he could receive an above-Guidelines sentence because the victim impact statements reported in his PSR urged that he be given the maximum possible sentence. In a previous case, we rejected the government's contention that, "because the PSR contained a full recitation of the defendant's criminal conduct, this put the defendant on notice of the factors on which the court relied for the upward departure." United States v. Mangone, 105 F.3d 29, 35 (1st Cir. 1997). Any reference to the victims' unsurprising and understandable wish that a defendant be punished to the full extent of the law is no more revealing of the court's inclination toward a non-Guidelines sentence and cannot satisfy the notice requirement. Cf. Blatstein, 482 F.3d at 732 ("Burns and Rule 32(h) do not permit a court to impose a variance sentence without notice merely because the basis for the variance is mentioned somewhere in the presentence documents.").

In many cases, multiple grounds for departure or variance will be supported by the facts, and the very point of Burns is to

free parties from the burden of guessing the particular grounds on which the court might choose to increase the sentence. When the ground for a potential departure or variance is not explicitly raised in either the PSR or other prehearing submission, the district court must otherwise provide notice that "specifically identif[ies] the ground on which [it] is contemplating an upward departure." Burns, 501 U.S. at 138-39.[15] No reference to a possible variance was made in any pretrial submission in this case. To the contrary, the PSR stated that "[t]he probation officer has not identified any information that would warrant a departure from the guidelines." Vega therefore did not receive notice before the sentencing hearing that satisfied the requirements of Rule 32.

b. Timing

The question of timing of the notice poses the more challenging issue in this case. Rule 32(h) requires the sentencing court to give the parties "reasonable notice" that it is considering a non-Guidelines sentence. One circuit has said that this notice must be provided "not later than the outset of the sentencing hearing," United States v. Hernandez, 251 F.3d 1247, 1251 n. 4 (9th Cir. 2001), and another has held that "notice given

---

[15] Thus, even if the PSR indicates that a departure may be warranted on a particular ground, the requirement of notice is not satisfied if the district court bases its deviation on another ground. Atencio, 476 F.3d at 1104 ("Rule 32(h) and Burns leave no doubt that the defendant has a right to know in advance the very ground upon which the district court might upwardly depart or vary.").

during the course of the sentencing hearing and put into effect less than two hours later was insufficient," United States v. Cole, 496 F.3d 188, 191 (2d Cir. 2007).  See also United States v. Calzada-Maravillas, 443 F.3d 1301, 1304 (10th Cir. 2006) (describing the "key component" of the notice requirement as "notice in advance of the sentencing hearing"); United States v. McCarthy, 97 F.3d 1562, 1580 (8th Cir. 1996) (holding that one day of notice was sufficient where counsel responded and declined additional time).

Importantly, the Supreme Court in Burns refrained from explicitly commenting on the timing of "reasonable notice" because the issue was not raised.  See 501 U.S. at 139 n.6.  Still, we conclude that the question is largely resolved by the language of Burns and Rule 32(h) requiring that notice be given when a court contemplates a departure "on a ground not identified for departure either in the presentence report or in a party's prehearing submission."  (Emphasis added.)  Implicit in this language is the understanding that Rule 32(h) notice would serve as an alternative to the forms of prehearing notice expressly referenced.  Such notice, like the methods for which it is a substitute, should generally be provided before the hearing.  Indeed, any other conclusion would place an unfair premium on how adroitly a lawyer is able to respond off-the-cuff to the district court's "surprise."

Nonetheless, we think it wise to eschew an inflexible rule because the need for prehearing notice is more compelling in some circumstances than others. If the court relies on record facts that plainly were well known to counsel, and allows counsel the opportunity to respond to its newly announced inclination to go outside the Guidelines, notice provided at or near the outset of the sentencing hearing could be reasonable. See United States v. Patrick, 988 F.2d 641, 647 n.7 (6th Cir. 1993) (noting that the Supreme Court "did not even go so far as to require notice in advance of the sentencing hearing, but rather left open the possibility that the notice requirement might be met simply by notice at the hearing"); United States v. Absalon, 210 F.3d 369, 2000 WL 294449, *3 (5th Cir. 2000) (table) (holding that notice was reasonably given where court recessed after notifying defendant at sentencing hearing that it was considering an upward departure, and counsel subsequently asked to proceed that day without a continuance, because defendant "had ample opportunity to prepare and present evidence in opposition to a departure"). In no circumstances, however, may a court give "reasonable notice" by offering counsel the opportunity to comment after it imposes sentence. See Calzada-Maravillas, 443 F.3d at 1306.

Here, Vega learned of the court's intention to sentence outside the Guidelines during the colloquy that preceded the formal sentencing, and Vega's attorney had the opportunity to respond at

length to the court's view that a variance was warranted on the ground that this was an atypical carjacking, involving a home invasion. Defense counsel repeatedly urged the court to rely on the dispassionate recommendation of the Probation Department in the PSR, concluding his argument as follows:

> Now, Your Honor, like I was saying, I understand the horror and the fear this kind of thing creates. All of us are human beings. But the purpose of the guidelines is to avoid that passion which is natural, which is normal, to influence the sentencing procedure. And when I hear him [the victim] I understand what he felt. I felt it when I was car jacked some years ago, around 20 years ago. And at the moment all I wanted was, you know, for this person to be[. . . .] I wanted revenge. And that's the feeling that one gets both as an individual and as a member of society. But sentencing should not be ruled by that passion.
>
> I believe that the presentence report, which was done in a scientific manner, so to speak, in a technical manner takes care of the factors that occurred. And the proper sentence should be what is recommended in the presentence report, which should be the 10 years for the firing of the gun. And he gets an enhancement for the firing. It would be five years, seven years because the gun was fired. He gets 10 and it should be 57 to 71 months for the robbery car jacking itself.
>
> The presentence report takes care of all the factors and I believe this is an appropriate sentence for what occurred. We are not talking a light sentence. We are talking about 15 years, which is a substantial amount of time. My client is 31 years now. He would be 46 years old when he comes out of jail. We are talking about society taking out a substantial part of my client's life for punishment for what he did. And that would be the summation for the defense, Your Honor.

Although defense counsel first objected to the court's failure to provide prehearing notice of its intent to impose a non-Guidelines sentence when the court raised that possibility early in the hearing, he did not say that he was unprepared to respond to the court's rationale and did not seek a continuance. Cf. Anati, 457 F.3d at 235, 237 (remanding for resentencing where district court rejected defense counsel's request for a "'brief adjournment to respond'" to sua sponte sentence above Guidelines range based on court's view of "'the deleterious impact of heroin in our communities'"). Importantly, the district court relied solely on the well known facts of the crime and the obvious conclusion that this was not a classic carjacking. Even on appeal, Vega offers no argument beyond that made by counsel at the hearing to refute the court's judgment that an enhanced sentence was warranted based on the nature of the crime.

> At the heart of Rule 32's notice requirement is the principle that a defendant should be sentenced only after "focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence."

United States v. Meeker, 411 F.3d 736, 745 (6th Cir. 2005) (quoting Burns, 501 U.S. at 134). We are satisfied that, in the circumstances of this case, Vega received the "reasonable notice" required by Burns and Rule 32.[16]

---

[16] In leaving the timing of reasonable notice to the lower courts, the Supreme Court observed that they might choose "to adopt

-34-

## C. Reasonableness of the Sentence

Vega's claim that his sentence is unreasonable is of necessity limited to the above-Guidelines term of imprisonment imposed on the carjacking count. This is so because Count Two, which charged use of a firearm in the carjacking, carried a mandatory minimum ten-year term, and the sixty-month concurrent term imposed on Count Three effectively was subsumed within the term imposed on the carjacking. Thus, only a modification of the carjacking sentence would be both permissible and of consequence.

Our review of a district court's sentencing decision post-Booker "focuses on whether the court has 'adequately explained its reasons for varying or declining to vary from the guidelines and whether the result is within reasonable limits,'" United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006) (quoting United States v. Scherrer, 444 F.3d 91, 93 (1st Cir. 2006) (en banc)); see also United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006)

---

appropriate procedures by local rule," Burns, 501 U.S. at 139 n.6; see United States v. Hernandez, 251 F.3d 1247, 1251 (9th Cir. 2001) ("[W]e leave to the individual districts the task of fashioning rules detailing when their courts must give notice of an intent to depart."). Puerto Rico Local Rule 132(b)(4) requires that parties seeking a departure or adjustment must submit a written motion at least ten days before the sentencing hearing, "specifying the grounds and legal authority in support of said request." Vega makes no developed argument about the applicability of that rule to the facts of this case, and we do not consider it, see United States v. Hansen, 434 F.3d 92, 105 (1st Cir. 2006), other than to note that the rule's insistence on advance notice of a requested departure or adjustment is consistent with our conclusions about the importance of prehearing notice.

(en banc).  If the court has made no legal error and "has offered a plausible explication of its ultimate sentencing decision, we are quite respectful of that decision."  Dixon, 449 F.3d at 204.

Vega argues that his sentence is unreasonable because it is greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a), which include the need "to reflect the seriousness of the offense" and "to provide just punishment for the offense."  He further contends that the court failed to take into account his "extraordinary family circumstances," including his father's recent death, his own drug addiction, and the impact of the criminal proceedings on his children and other family members.

As quoted above, the district court explained at length its view that the circumstances of this case were exceptional – involving a home invasion in the middle of the night and a near-miss shooting of one of the victims.  Vega does not dispute the characterization of this carjacking as unusually violent and risky. The court further pointed to Vega's admittedly violent past. Although the court did not discuss the family circumstances Vega now cites, Vega did not assert these factors at the sentencing hearing to support his request for a lenient sentence.[17]  We also

---

[17] Counsel asked the court to impose a sentence at the low end of the Guidelines range of 57 to 71 months, stating:

I believe 57 months will be an adequate sentence when taking into consideration that he will end up serving

note that, despite its view that this was an exceptionally serious crime, the court did not impose the statutory maximum term of fifteen years.

This context persuades us that no sentencing error occurred; the court offered an "entirely plausible explication of why it chose [this] sentence," Dixon, 449 F.3d at 205, and, particularly in light of the deferential standard of review, we have no doubt that "the sentence falls within the realm of reasonableness," id. at 206.

**IV.**

We briefly summarize our holdings:

(1) Vega waived his claim relating to the victims' pretrial identification of him as the perpetrator by failing to file a pretrial suppression motion;

(2) The district court's finding that Vega's confession was voluntary, and therefore admissible, was amply supported by the evidence presented at the suppression hearing, including Vega's signed waiver and his own testimony;

(3) The court properly reopened the case to allow the government to introduce evidence of the interstate commerce element of the carjacking crime;

---

almost 15 years for this offense, which is adequate punishment. I don't think that 71 months for that particular offense should be imposed. And that will be it, Your Honor.

-37-

(4) The evidence presented at trial, including the victims' identification of Vega, his confession, and physical evidence found near the site of the abandoned stolen car, was sufficient to allow a jury to find beyond a reasonable doubt that Vega committed the carjacking;

(5) Although the case must be remanded so that the district court may conform the written sentencing judgment on the gun possession charge to the oral pronouncement of a sixty-month sentence, Vega's above-Guidelines sentence on the carjacking count was both reasonable and imposed with reasonable notice.

We therefore **affirm** Vega's conviction and sentence, but **remand** for correction of the district court's written judgment.

**So ordered.**