# United States Court of Appeals
## For the First Circuit

No. 06-1558

UNITED STATES OF AMERICA,

Appellee,

v.

MANUEL A. VEGA-SANTIAGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté,  U.S. District Judge]

Before
Boudin, Chief Judge,
Torruella, Lynch, Lipez and Howard, Circuit Judges.

Mark S. Davies and Johnny Rivera-González, with whom Walter Dellinger, Ryan W. Scott, and O'Melveny & Myers LLP were on supplemental brief for appellant.
Vijay Shanker, U.S. Department of Justice, Criminal Division, Appellate Section, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, were on supplemental brief for appellee.

February 21, 2008

OPINION EN BANC

**BOUDIN, Chief Judge**. Manuel Vega-Santiago appealed from his conviction on one count of armed carjacking, 18 U.S.C. § 2119(1) (2000), and two counts of related weapons offenses, id. §§ 924(c)(1)(A), 922(k), asserting various trial errors. He also appealed from his prison sentence of 240 months, which represented an upward variance from the sentencing guidelines range of 177 to 191 months that would otherwise have applied to him.

A panel of this court affirmed Vega's conviction and sentence, remanding only to correct a discrepancy between the written and oral judgments. United States v. Vega-Santiago, --- F.3d ---, 2007 U.S. App. LEXIS 25420 (1st Cir. Oct. 31, 2007). We granted rehearing en banc to consider the panel's ruling that the district judge must provide "notice" to litigants before imposing a sentence outside the guideline range--a requirement that the panel found satisfied in this case.

The facts in detail can be found in the panel opinion. Vega, 2007 U.S. App. LEXIS 25420, at *2-*9. Pertinently, here the district judge chose--pursuant to the sentencing regime established by the Supreme Court, United States v. Booker, 543 U.S. 220 (2005); see also United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006) (en banc)--to impose a sentence above the range applicable under the sentencing guidelines. He did so after weighing the sentencing factors outlined in 18 U.S.C. § 3553(a)--in particular, the nature of the offense and the background of the offender.

-2-

Neither the presentence report nor the government's pre-hearing submissions had suggested varying from the guidelines.

The question before us is whether a district court, before sua sponte imposing a sentence outside the recommended guideline range, must automatically provide advance notice to the parties of its intent to do so and its contemplated reasoning. The circuit courts being divided,[1] the Supreme Court is now likely to decide the issue, United States v. Irizarry, 458 F.3d 1208, 1212 (11th Cir. 2006), cert. granted, 2008 U.S. LEXIS 409 (Jan. 4, 2008) (No. 06-7517), but until it does, district judges in this circuit are entitled to guidance on an issue potentially present in every sentencing. Our answer is that notice is sometimes, but not always, required.

---

[1]Five circuits have held that notice is required. United States v. Anati, 457 F.3d 233, 237 (2d Cir. 2006); United States v. Davenport, 445 F.3d 366, 371 (4th Cir. 2006); United States v. Cousins, 469 F.3d 572, 580 (6th Cir. 2006); United States v. Evans-Martinez, 448 F.3d 1163, 1164 (9th Cir. 2006); United States v. Atencio, 476 F.3d 1099, 1104 (10th Cir. 2007).

Four have concluded to the contrary. United States v. Vampire Nation, 451 F.3d 189, 195 (3d Cir. 2006); United States v. Mejia-Huerta, 480 F.3d 713, 722 (5th Cir. 2007), petition for cert. filed, 75 U.S.L.W. 3585 (Apr. 18, 2007) (No. 06-1381); United States v. Long Soldier, 431 F.3d 1120, 1122 (8th Cir. 2005); United States v. Irizarry, 458 F.3d 1208, 1212 (11th Cir. 2006), cert. granted, 2008 U.S. LEXIS 409 (Jan. 4, 2008) (No. 06-7517); see also United States v. Walker, 447 F.3d 999, 1006 (7th Cir. 2006) (holding notice no longer required even for traditional departures).

Much of the dispute among our sister circuits has concerned the applicability of Federal Rule of Criminal Procedure 32(h). The rule provides that:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Prior to Booker, the guidelines were mandatory save for "departures" that could be allowed by the district judge only in accordance with rules imposed both by the governing statute and the guidelines themselves. The term "departures" refers specifically to just such deviations. Rule 32(h) speaks explicitly of "departures," a term with a precise legal meaning. U.S.S.G. § 1B1.1 cmt. n. 1(E) (2007); United States v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir. 1989). Departures continue to be available after Booker and it is to them that Rule 32(h) is addressed.

Booker has created new latitude for district judges by permitting them to treat the guidelines as advisory and, after calculating the guideline sentence (including any departure), to impose a different sentence based on the broader criteria identified in the statute. Such deviations have been variously labeled--"variance" is one common term--but they are not "departures" either in technical terminology or in common parlance.

-4-

On its face, Rule 32(h) cannot apply of its own force to variances, a distinct concept developed after the rule was promulgated.

It is far from clear whether the drafters of the rule would have included variances within the rule if they had then existed, but it does not matter: a formal rule can be changed through the statutorily prescribed rulemaking process, which includes congressional oversight of proposed changes, but it cannot be rewritten ad hoc by an individual judge or panel. "[A] legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). So, too, with formally adopted rules.

The more difficult question is whether the reasoning that prompted Burns v. United States, 501 U.S. 129 (1991)--the decision that Rule 32(h) codified--should be extended without qualification to this new context to establish a judicially created rule requiring automatic advance notice for variances. The Supreme Court could, and might in the end, choose to do so. But this would be an expansion of Burns' holding, which was specifically directed to departures.[2]

---

[2]The government, which has an obvious interest in obtaining notice of contemplated downward variances, has reversed the position it took before the panel and now insists that Rule 32(h) does apply. But it imbues the notice requirement with such flexibility as to whether and when notice must be given that its position is ultimately quite different from Vega's.

The Court in Burns held that courts may not depart from the guidelines if neither the presentence report nor the pre-hearing submissions of the parties had requested such a departure, unless reasonable notice is provided. That requirement was said to be implicit in the demands of a federal rule giving parties the right to comment on "matters relating to the appropriate sentence."[3] Without notice, the Court reasoned, counsel will be unprepared to comment meaningfully on grounds for departure proposed by the judge, resulting in a lack of adversarial testing. Burns, 501 U.S. at 135.

There are competing arguments as to whether and how far Burns and its rationales bear on variances; and the Supreme Court will answer those questions in due course. But our view is that, in this different context, adopting a mechanical rule would be a mistake: it would not respond to the realities of a system in which judges are afforded much broader discretion than in the recent past, it would reinforce guideline sentencing, and it would considerably complicate and prolong the sentencing process.

A bright-line advance notice requirement for potential departures fit sensibly within the mandatory guideline regime in place when Burns was decided. The guidelines provided for departures, and articulated specific grounds upon which they can

---

[3]This rule remains in force, Fed. R. Crim. P. 32(i)(C), but reflects only a general policy on the right to comment and does not specify at all whether and when notice of anything must be given.

-6-

(and cannot) be premised.  E.g., U.S.S.G. §§ 4A1.3, 5K1.1-2.23. Although in theory the possible grounds for departure were unbounded, in practice they functioned almost as a set of auxiliary guidelines.  See United States v. Koon, 518 U.S. 81, 95-96 (1996) ("The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.'").

Thus, departures presented a finite number of specific, discrete (and often binary) determinations that would govern departures and thus the ultimate sentence.  It made sense to advise the parties in advance of any proposed departure so as allow them to dispute the facts critical to the departure and to assist the court on pertinent legal questions.[4]  The premised facts were reviewable for clear error; the legal rulings, fully reviewable. 18 U.S.C. § 3742(e).  In short, departures looked much like the customary fare of adversarial litigation.

Under Booker, Rita v. United States, 127 S. Ct. 2456 (2007), and now Gall v. United States, 128 S. Ct. 586 (2007), the sentencing inquiry, after calculating the guideline range, is far more broad, open-ended and discretionary.  Under Booker, the district court must independently consider the statutory sentencing

---

[4]Departures often required the judge to analyze not only the guidelines, but also the policy statements of the Commission (which were binding, Stinson v. United States, 508 U.S. 36 (1993)), and the circuit law relating to appropriate and inappropriate grounds.

factors, 18 U.S.C. § 3553(a), which are phrased in very general terms (e.g., "the nature and circumstances of the offense"; the need for the sentence to "to reflect the seriousness of the offense"). A variant sentence may then be imposed based on a complex of factors whose interplay and precise weight cannot even be precisely described.

The district judge draws on information from the trial, the pre-sentence report and the parties' commentary, the defendant's allocution, victims' statements, letters, its own review of these materials before the sentencing hearing and whatever is added during the hearing. Throughout the hearing, the judge may well be revising his views depending on what is presented and how counsel respond to questions. This is a fluid and dynamic process and the court itself may not know until the end whether a variance will be adopted, let alone on what grounds.

Yet in order to provide advance notice of any value, a district court would have to advise not only that a variance is possible but also the ground and reasoning behind it before he has even heard the full presentation. This is very different than the identification in advance of a particular ground of departure that may or may not be invoked. "[R]equiring advance notice of 'any ground' . . . would undoubtedly prove to be unworkable." United States v. Vampire Nation, 451 F.3d 189, 197 (3d Cir. 2006).

-8-

Further, a mechanical requirement of such notice is unnecessary. In the normal case a competent lawyer--and for incompetence other remedies are available--will anticipate most of what might occur at the sentencing hearing--based on the trial, the pre-sentence report, the exchanges of the parties concerning the report, and the preparation of mitigation evidence. Garden variety considerations of culpability, criminal history, likelihood of re-offense, seriousness of the crime, nature of the conduct and so forth should not generally come as a surprise to trial lawyers who have prepared for sentencing.

Were a mechanical notice rule imposed, some judges would shy away from imposing non-guideline sentences that the parties had not proposed in advance, increasing the "gravitational pull" of the guidelines, United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005), and compromising the greater freedom sought by Booker and Rita. See, e.g., Rita, 127 S. Ct. at 2465 (holding that a district judge "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply"). Alternatively, the judge would often have to employ a burdensome two-stage regime, explaining at the end of the first hearing his proposed sentence and then conducting a follow-up hearing based on such notice.

The preferable solution is thus not a mechanical rule mandating formal notice in every case where the judge may conceivably vary from the guidelines. Rather, when proposing to

adopt a variant sentence relying on some ground or factor that would <u>unfairly surprise</u> competent and reasonably prepared counsel, a judge must either provide advance notice or, on request, grant a continuance in order to accommodate a reasonable desire for more evidence or further research.  No formal rule is required for us to adopt such a prudential policy as a matter of precedent.

In practice such cases of unfair surprise, probably rare, are not that hard to identify; and this case is not one of them. Here, the district judge relied primarily on three particular details of the crime--that it involved the invasion of a home, death threats and a near-miss firing of a gun--and that Vega had been previously arrested (but not convicted) on charges of violent crime.  The details of the crime were well known to counsel; and Vega had admitted his prior "brushes with the law" which were noted in the pre-sentence report.[5]

Defense counsel may not have anticipated that the district judge would rely upon <u>those</u> particular facts to impose an above-guideline sentence, but having that knowledge in advance would not have made any obvious difference.  The facts themselves were familiar and undisputed, so there is no concern here that

---

[5]Vega points out that the district judge agreed to strike that portion of the PSR at the start of the sentencing hearing.  But, as the judge explained when delivering the sentence, it was removed only because Vega's counsel was concerned that the Bureau of Prisons would use it to "jack up his security level."  The truth of the admission was not contested.

counsel might have been able, with notice, to challenge them. And nowhere else in the law is the judge required to explain his reasoning <u>before</u> counsel have argued to him.

In granting rehearing en banc we invited supplemental briefing not only on the panel's automatic notice requirement but on whether there was unfair surprise in this case. Defense counsel have added new arguments to those earlier presented to the panel. But we agree with the panel's original view that unfair surprise has not been established. At sentencing defense counsel had ample opportunity and incentive, without any advance notice of a possible variance, to make the same arguments now offered to us.

First, Vega submits that mitigating evidence about his family circumstances could have been offered. But mitigating evidence would have been relevant to sentencing with or without a variance from the guideline range. The principal factor cited, the death of Vega's father shortly before the crime, was readily detectable by counsel and potentially useful to argue for a lower sentence within or (under <u>Booker</u>) below the guideline range.

Next, Vega contends that a carjacking that involves invading a home is no worse, for purposes of the section 3553(a) factors, than an ordinary carjacking. We fail to see how further notice was necessary in order to prepare that argument about the seriousness of the offense facts--a typical sentencing consideration. Comparing and contrasting a defendant's particular

-11-

crime to its "heartland" prototype is <u>always</u> relevant.  That the judge might think that a home invasion carried an extra sense of menace is hardly a surprise.

Finally, Vega says that the death threat and firing of the gun were already taken into account by the guidelines, and that with more notice, defense counsel would have been prepared to point that out.  But a factor that is worked into the guideline calculus may still be considered by a district judge in the section 3553(a) analysis.  <u>See, e.g.</u>, <u>United States</u> v. <u>Scherrer</u>, 444 F.3d 91, 93-94 (1st Cir. 2006) (en banc), <u>cert. denied</u>, 127 S. Ct. 927 (2007). Anyway Vega's counsel <u>did</u> emphasize--without requiring any special notice--that the enhancements provided in the guidelines were sufficient.  The district judge simply did not agree.

Parts I, II, III(A), and III(C) of the panel opinion are <u>reinstated</u>; Vega's conviction and sentence are <u>affirmed</u>; and the case is <u>remanded</u> for correction of the written judgment.

<u>It is so ordered.</u>


**Dissents follow.**

**TORRUELLA**, <u>Circuit Judge</u> **(Reserving and Dissenting).**

The circumstances that force me to state my views at this time leave me no alternative but to partially emulate Justice Felix Frankfurter's response to similar constraints, about which he stated:

> Time is required not only for the primary task of analyzing in detail the materials on which the Court relies. It is equally required for adequate reflection upon the meaning of these materials and their bearing on the issues now before the Court. Reflection is a slow process. Wisdom, like good wine, requires maturing.
>
> Moreover, the judgments of this Court are collective judgments. They are neither solo performances nor debates between two sides, each of which has its mind quickly made up and then closed. The judgments of this Court presuppose full consideration and reconsideration by all of the reasoned views of each. Without adequate study there cannot be adequate reflection. Without adequate reflection there cannot be adequate deliberation and discussion. And without these, there cannot be that full interchange of minds which is indispensable to wise decision and its persuasive formulation.
>
> The circumstances being what they are, I am forced, deeply as I regret it, to reserve for a later date [the full] expression of my views.

<u>Reid</u> v. <u>Covert</u>, 351 U.S. 489, 492 (1956) (Frankfurter, J., reserving).

This solution is, of course, hardly a satisfactory one, as it would leave me, an active member of this Court, without an effective voice and vote at a crucial juncture in this proceeding

-13-

-- a result which affects the substantive rights of the parties to this appeal. I believe that the parties are entitled to the benefit of my views, even if they are considered to be in error by some of my colleagues.

Although I am in substantial agreement with the views expressed by Judge Lipez in his excellent dissent, I am also deeply concerned by the serious policy, procedural, and substantive issues raised by the unwarranted haste which has characterized this en banc proceeding. Accordingly, I must state my views, even if in a preliminary and incomplete fashion.

The convocation of this particular en banc proceeding highlights the whimsical and uneven manner in which this circuit often applies the rehearing rules. Indeed, both the granting and denying of petitions for these extraordinary proceedings evince a double-standard with respect to which issues are deemed meritorious of such review. See, e.g., Cerqueira v. American Airlines, No. 07-1824 (1st Cir. XXXX) (Torruella, J. dissenting). Time constraints do not allow for an exhaustive inventory of this asseveration, but the circumstances of this present appeal demonstrate one such example.

In this case, before either the appellant or the appellee had the opportunity to seek en banc review, the court undertook a rather unusual procedure and ordered en banc rehearing sua sponte. The appeal thus metamorphosed into one more relevant to, and

-14-

reflective of, a judicially fueled agenda. That agenda became evident in light of the Government's own change of heart: both sides now agree that Rule 32(h) applies to post-Booker variances. Furthermore, the issue for which the en banc court was convened is presently before the Supreme Court, see United States v. Irizarry, 458 F.3d 1208 (11th Cir. 2006), cert. granted, 128 S. Ct. 828 (2008), and will most likely be decided in a definitive way before June. At a minimum, circumstances would seem to counsel awaiting the decision of the Supreme Court rather than unnecessarily investing our limited judicial resources on this one.

In any event, I am opposed to the majority's disregard for the unequivocal language of Rule 32(h) and the clear mandate of the Supreme Court in Burns v. United States, 501 U.S. 129 (1991). Specifically, in Burns, the Court observed that the purpose of Rule 32 was to promote "focused, adversarial resolution of the legal and factual issues." Id. at 137. The Court recognized that in the absence of notice, parties would make arguments "in a random and wasteful way by trying to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative" or, worse yet, "the parties [may] not even try to anticipate such a development," and leave the contemplated grounds untested by the adversarial process. Id.

The majority's opinion substitutes these requirements with what is, in effect, an unauthorized rule-making amendment to

Rule 32 by this court. The majority has concocted a vague standard for pre-sentence notice which will inevitably lead to interminable litigation as to what a "competent and reasonably prepared counsel" would have anticipated. Slip Op. at 10. This will undoubtedly have the effect of causing more delay and a greater waste of judicial resources than the occasional continuance forecast by the majority's opinion were the Rule 32 standard to be followed. See Slip Op. at 8. The fact is that such continuances might be necessary in only a handful of cases.[6] In any event, the postponement of sentencing is a minor inconvenience to the judicial system when weighed against the basic due process protections afforded by the Rule 32 notice requirements. See Burns, 501 U.S. at 138 (noting that "were we to read Rule 32 to dispense with notice, we would then have to confront the serious question whether notice in this setting is mandated by the Due Process Clause" (emphasis added)). I dissent.

---

[6]Of the federal post-Booker cases, only 1.5% of cases had sentences above the Guidelines and only 11.9% were below (53.5% of which arose in the five circuits which already require the Rule 32 notice). See U.S. Sentencing Comm'n, 4th Quarter Report (2006), available at http://www.ussc.gov/sc_cases/Quarter_Report_4th_07.pdf.

**LIPEZ, <u>Circuit Judge</u>, dissenting**. I respectfully dissent from the majority's conclusion that the reasonable notice required by <u>Burns</u> v. <u>United States</u>, 501 U.S. 129 (1991), and Federal Rule of Criminal Procedure 32(h) is inapplicable to Guidelines variances. The majority's rejection of a reasonable notice requirement in favor of a new standard based on whether "some ground or factor . . . would unfairly surprise competent and reasonably prepared counsel" leaves district court judges without the very guidance the majority purports to offer them. Indeed, the government now also agrees that the reasonable notice required by <u>Burns</u> and Rule 32(h) must apply to Guidelines variances to ensure full adversarial testing of the issues related to sentencing.

Moreover, having further considered the issue in the context of en banc briefing and argument, I have become convinced that the reasonable notice requirement means notice of a possible variance being contemplated by the judge in <u>advance</u> of the sentencing hearing. Such prehearing notice is most consistent with Rule 32's directive that parties be given the opportunity to comment on matters "relating to an appropriate sentence." Fed. R. Crim. P. 32(i)(1)(C). This rule does not mean that every failure to give prehearing notice will require a new proceeding. Such errors lend themselves to harmless error review. In this case, however, I cannot find that the error was harmless, and I therefore

-17-

would vacate Vega's sentence and remand for a new sentencing hearing.

## I.

My conclusion that notice may be deemed "reasonable" only if given in advance of the sentencing hearing is informed by multiple considerations. Most importantly, the interest at stake for the defendant – the length of incarceration – could not be more critical, even when the potential difference in a defendant's sentence would be "merely" a matter of months. Whether or not the Due Process Clause is implicated,[7] the defendant's opportunity to comment meaningfully when a court contemplates a sentence outside the Guidelines is of utmost importance.

It also is significant, as the panel opinion observed, that implicit in Burns and Rule 32(h) "is the understanding that Rule 32(h) notice would serve as an alternative to the forms of prehearing notice expressly referenced" in the rule, i.e., the presentence report or a party's prehearing submission. United States v. Vega-Santiago, --- F.3d ---, 2007 U.S. App. LEXIS 25420 (1st Cir. Oct. 31, 2007), at *38 (emphasis in original). Thus, a rule of pre-hearing notice is more consistent with the principles

---

[7] The Supreme Court noted in Burns that its construction of Rule 32 avoided "the serious question whether notice in this setting is mandated by the Due Process Clause." 501 U.S. at 138.

-18-

articulated in <u>Burns</u> and incorporated into Rule 32.[8] To require counsel to respond off-the-cuff to a previously unannounced rationale for a non-Guidelines sentence is to deny the very period of deliberation that "notice" is intended to guarantee. Even when competent counsel is familiar with all of the facts of the crime and the general principles of sentencing law, he or she may not immediately appreciate their relevance to the proposed variance from the Guidelines. <u>Accord</u> <u>United States</u> v. <u>Calzada-Maravillas</u>, 443 F.3d 1301, 1304 (10th Cir. 2006) (observing that the "key component" of the notice requirement is "notice in advance of the sentencing hearing").

In addition, a bright-line rule of prehearing notice would provide unambiguous direction to both the parties and the court, with minimal burden. We must keep in perspective the small number of cases at issue here. At the en banc oral argument, the government represented that, in most instances, departures or variances are either proposed by the Probation Department in the presentence report or requested by one of the parties. This understanding that sua sponte variances by the court occur infrequently informed the conclusion reached by the original panel, which included an experienced district court judge. It will be the

_____

[8] I am, of course, well aware that Rule 32(h) applies by its terms only to sentencing <u>departures</u>. It is the principles of <u>Burns</u>, which are reflected in Rule 32(h), that make the notice requirement equally applicable to sentencing variances.

exceptional occasion when a court must provide its own prehearing notice of a contemplated ground for a variance; in such instances, the court would be able to alert the parties with a brief written order. A continuance would be necessary even more rarely, when a rationale for a variance first arises at the sentencing hearing.

Moreover, requiring that notice be given as a matter of course before the hearing reduces the possibility that the court will be blind-sided by a party's last-minute attempt to secure a non-Guidelines sentence. The judge is obviously in a better position to evaluate the merits of a variance if it is proposed in advance. With a rule of advance notice, the government and defendant will have greater incentive to present all arguments for a non-Guidelines sentence in their prehearing submissions, facilitating sentencing proceedings that most fairly take into account all relevant considerations.

However, even a rule of advance notice will not eliminate some questions of reasonableness. The content of the notice and its timing in relation to the date of the hearing and the issues to be addressed are elements of reasonableness. As for content, the panel opinion pointed to the requirement in <u>Burns</u> that the notice "specifically identify the ground on which the district court is contemplating an upward departure." 501 U.S. at 138-39. A similar requirement should apply to a contemplated variance. Any less exacting requirement would impose on the parties "the burden of

-20-

guessing the particular grounds on which the court might choose to increase [or decrease] the sentence." Vega-Santiago, --- F.3d at ---, 2007 U.S. App. LEXIS 25420, at *36.

As for timing, reasonableness will depend on whether the parties were given sufficient opportunity to prepare meaningful comment on the previously unannounced ground for deviating from the Guidelines.  If addressing the court's contemplated rationale would require minimal legal research or investigation of facts, a brief period of time would be adequate.  But if, for example, the court announced that it might rely on mitigation evidence presented in letters submitted by multiple individuals, the parties might need time to review the submissions and conduct further investigation. In such circumstances, reasonable notice would have to be given far enough in advance of the hearing to accommodate such preparation.

Regardless of the complexity or novelty of the court's sua sponte rationale, at least some advance warning is crucial to ensure the most effective advocacy and, in turn, "the thorough adversarial testing contemplated by federal sentencing procedure," Rita v. United States, 127 S. Ct. 2456, 2465 (2007).  Other circuits also have explicitly adopted this view. See, e.g., United States v. Cole, 496 F.3d 188, 191 (2d Cir. 2007) ("[N]otice given during the course of the sentencing hearing and put into effect less than two hours later was insufficient."); United States v. Flanders, 491 F.3d 1197, 1220 (10th Cir. 2007) (finding that the

-21-

court's announcement on the first day of sentencing that it might impose a non-Guidelines sentence was "plainly insufficient under Rule 32(h)").

A failure to provide reasonable notice will not always require resentencing. In some cases, the reviewing court may be satisfied that lack of proper notice was harmless because it would not have placed the defendant in a position to comment more effectively on the proposed variance. Where, for example, counsel had the opportunity to provide a thoughtful response to the court's rationale for a variance and where the defendant on appeal offered no additional rebuttal to the court's rationale, it would be appropriate to conclude that the lack of notice was harmless. If, however, a defendant identifies plausible rebuttals to the court's rationale that could have been made if counsel had been given time to prepare, the principles of Burns require resentencing. Otherwise, "a critical sentencing determination will go untested by the adversarial process contemplated by Rule 32 and the Guidelines." Burns, 501 U.S. at 137.

The harmless error analysis addresses many of the same considerations that were included in the panel's favorable evaluation of the reasonableness of the notice provided near the outset of the sentencing hearing in this case. However, for the reasons stated, I now conclude that the better approach is to make advance notice the rule and to engage in harmless error review when

the rule is violated.  As I explain in the following section, the error in this case was not harmless.

## II.

As soon as the government proposed at Vega's sentencing hearing that the court go beyond the Guidelines term of 57 to 71 months, his counsel protested that the defense should have been advised in advance "so it can be prepared to rebut these arguments."  The court disagreed that notice was required, heard testimony from the victims, and explained that the crime warranted a higher sentence because, inter alia, it involved a home invasion with a shooting and was therefore "not a regular car jacking."  Counsel unsuccessfully argued in response that the presentence report and the Guidelines recommendation took the particular facts of the crime into account.  In announcing the sentence, the court referred to defendant's "invad[ing] the privacy of a home in the middle of the night," the victim's plea for mercy, and the discharge of the weapon.

In his en banc brief, Vega offers several arguments that could have been made at the sentencing hearing if counsel had received advance notice that the court was contemplating a variance based on the specific details of the offense:[9]

---

[9] Although these arguments were not made to the panel, I deem it appropriate to consider them on en banc review because we specifically invited argument on the notice issue.

-23-

• In response to the court's concern that the carjacking was unusual because it involved a home invasion that caused serious psychological injury to the victims, counsel could [have] challenged the veracity of the victims' claims of paralyzing fear, noting that [the victim] responded to the robbery by getting a gun, firing 13 shots at Mr. Vega-Santiago as he drove away on a public street, and then reloading and "go[ing] after the defendant" with his friend in an SUV. Counsel also could have argued that being robbed and fired upon by an armed gunman in *any* location causes serious emotional trauma, and that the marginal cost of enduring the crime at home, as opposed to numerous other private locations, does not justify a variance from the guideline range.

• In response to the court's reliance on the shot fired during the robbery, counsel could have pointed out that the mandatory consecutive sentence on Count Two already reflected a three-year increase because "the firearm [was] discharged" rather than merely "brandished." *Compare* 18 U.S.C. § 924(c)(1)(A)(iii) (ten-year mandatory minimum), *with* 18 U.S.C. § 924(c)(1)(A)(ii) (seven-year mandatory minimum).

• In response to the court's reliance on the death threat and pleas for mercy, counsel could have explained the effect of the guideline adjustment for death threats, U.S.S.G. § 2B3.1(b)(2)(F), which was applied in this case, and could have reminded the court of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6).

Appellant's En Banc Brief at 21-22 (citations omitted).

These arguments, which directly challenge the need for a non-Guidelines sentence to meet the court's objectives, are neither frivolous nor tangential to the court's reasoning. We cannot know

their impact on the court if counsel had had the opportunity to present them at the sentencing hearing. The court expressed concern that Vega's sentence "reflect how serious this offense was." Although defense counsel argued at the hearing that the Guidelines sentencing range would accomplish that purpose, the brief adds specific content, supported by authority, to the more general argument that the Guidelines already accounted for the facts that bothered the judge. It is precisely this sort of developed presentation by counsel, reinforced by legal and factual references, that is denied a defendant who is not given advance notice of the court's contemplated grounds for a non-Guidelines sentence. Moreover, in its explanation for the sentence, the court also referred to Vega's admission that he had "previous brushes with the law which included violent crime allegations for which he was not convicted" – a basis for deviating that the court had not previously mentioned and for which, therefore, no notice was provided.

Where, as here, a defendant demonstrates that lack of notice deprived him of "full adversary testing of the issues relevant" to his sentence, <u>Burns</u>, 501 U.S. at 135, the error cannot be deemed harmless and a remand for resentencing is necessary.

**III.**

The majority predicts that "a mechanical notice rule" would cause undesirable consequences. In their view, it would

cause judges to "shy away from imposing non-guideline sentences that the parties had not proposed in advance," or, alternatively, "the judge would often have to employ a burdensome two-stage regime." Neither of these assertions has merit.

## A. Multiple Proceedings

The majority's concern that an advance notice rule would often require a two-stage sentencing process reveals a fundamental misunderstanding of the sentencing process. My colleagues appear to believe that a judge enters the courtroom for a sentencing hearing with little sense of the sentence he or she intends to impose or the factors that will affect that sentence. They assume that these factors will become apparent only during the course of the hearing and that, if notice is required for a decision to deviate from the Guidelines, many variances will require a continuance and second hearing.

That concern is at odds with reality. While the majority may be correct that a judge will not make a final sentencing decision until the end of the hearing, and "may well be revising his views depending on what is presented and how counsel respond to questions," the judge will arrive at that hearing after a review of the presentence report and other relevant materials. He or she will already have a developed view of what the appropriate sentence is, including its length. To be sure, the judge's views may be altered by what he or she hears at the hearing. But a judge will

almost always have considered in advance of the hearing whether an upward or downward variance is appropriate. To suggest less forethought on the part of the sentencing judge is to suggest that the judge enters the hearing unprepared.

In other words, the ultimate decision to deviate from the Guidelines – made at the conclusion of the sentencing hearing, after adversary testing of the issues – should not be confused with the earlier inclination – developed before the hearing – to focus attention on particular factors that might warrant such a deviation. The notice required by Rule 32(h) is not that a court **will** impose a variance, but only that it is considering factors that **may** justify a variance. Hence, it would pose no burden for the court to provide notice in advance of the hearing that such a variance is contemplated. In those few instances where the court's inclination to impose a variance is based on a factor or factors raised for the first time at the hearing, the principles of <u>Burns</u> and Rule 32(h) require the court to provide sufficient notice to enable both the defendant and the government to consider, research and thoughtfully respond to the new ground. In that case a continuance of the sentencing hearing would be required. Such continuances would be a small price to pay for the fairness to all parties of the advance notice requirement.

## B. The Role of the Guidelines

The notion that a rule of advance notice would inappropriately incline judges toward the Guidelines is also seriously flawed. In multiple cases this term, the Supreme Court has explicitly confirmed that the Guidelines remain a central part of the sentencing process post-Booker. The Guidelines are "the starting point and the initial benchmark" for sentencing decisions, Gall v. United States, 128 S. Ct. 586, 596 (2007), entitled to "respectful consideration," Kimbrough v. United States, 128 S. Ct. 558, 570 (2007), because "in the ordinary case, the [Sentencing] Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives,'" id. at 574 (quoting Rita, 127 S. Ct. at 2465). See also United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006 (en banc) (holding that the district court normally should begin with a Guidelines calculation).

The majority does not dispute the continuing centrality of the Guidelines to the sentencing process. Indeed, they acknowledge the Guidelines' "gravitational pull." They worry, however, that an advance notice requirement will increase the Guidelines' pull on district court judges and hence could compromise the changes in the sentencing process effected by the Supreme Court in Booker and its progeny. The suggestion that district court judges would shy away from sua sponte variances as

-28-

a matter of convenience is misguided. It is inconceivable to me that, having given the Guidelines due consideration and finding them lacking, a judge would suppress the independent judgment required by the Supreme Court simply to avoid providing the parties with reasonable prehearing notice. The modest burden of preparing a brief notice or, in the rare case, continuing an already convened sentencing hearing to a later date would not deter a judge from imposing a variance.

Rather than justifying less notice, the broader sentencing discretion afforded to district judges post-Booker requires that defendants be given the same advance warning of the court's contemplated rationale for deviating from the Guidelines that Burns required for sentencing departures. As the panel opinion observed, the need for notice remains acute because of the virtually limitless number of factors that may be used to support a variance. Although notice under Rule 32 is owed to both the defendant and the government, the defendant's interest in preparing the most persuasive argument available against an upward variance is obviously of particular significance. Defendants should not be placed in the untenable position of "trying to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative" or risk allowing "a critical sentencing determination [to] go untested by the adversarial process." Burns, 501 U.S. at 137.

The majority acknowledges that there are some cases where, as a matter of fairness, notice must be provided. But the majority's proposed approach – providing notice or granting a continuance when the court proposes to rely on a ground that would "unfairly surprise competent and reasonably prepared counsel" – has at least three serious flaws. First, it gives no guidance at all to district judges. Without an anchor in either the Due Process Clause or a bright-line rule, the majority's standard offers sentencing judges no framework within which to evaluate the need for notice. Fairness, surprise and reasonable preparation are all elusive concepts that individual judges will see differently.

Second, the ambiguity of the standard leaves every non-Guidelines sentence that was imposed without notice open to challenge on appeal. Surprise arguably exists any time the court announces, for the first time at the sentencing hearing, its sua sponte intention to deviate from the Guidelines, and surprise will rarely be deemed "fair" by a defendant who has a right, under Rule 32, to comment on matters affecting the length of his incarceration. See Fed. R. Crim. P. 32(i)(1)(C). Debate over what it means for counsel to be "reasonably prepared" for a sentencing hearing surely will consume more judicial time than judges would expend in giving prehearing notice. Moreover, the standard is so vague that appellate courts could rarely, if ever, conclude that the sentencing court had erred.

Third, the majority suggests that most cases would not involve unfair surprise because courts typically would base variances on "[g]arden variety considerations" such as the likelihood of recidivism or the seriousness of the crime. But the commonality of such factors is not the issue. What matters is how the court is processing all of the information relevant to those factors and its inclination to take an exceptional view of them. In the absence of advance notice, neither the defendant nor the government has reason to anticipate that the usual factors may lead to a non-Guidelines sentence, and advocating for a lower sentence or higher sentence within a Guidelines range is not the same as advocating against the court's inclination to sentence outside the Guidelines. That difference is reflected in the new arguments asserted in Vega's en banc brief, which specifically emphasize why the court's concerns did not require a sentence beyond the Guidelines.

In sum, an easily administered bright-line rule requiring advance notice in all cases would promote both actual fairness in sentencing and "the perception of fair sentencing," Gall, 128 S. Ct. at 597, without undue burdens on the courts. The Supreme Court already has recognized the need for a reasonable notice requirement in the context of departures. In the post-Booker era, when the court has broader discretion to go outside the Guidelines, notice remains a critical component of the defendant's right to

meaningfully comment on the appropriateness of a non-Guidelines sentence.  I therefore respectfully dissent.