# United States Court of Appeals
## For the First Circuit

No. 09-2655

UNITED STATES OF AMERICA,

Appellee,

v.

HENRY FERNÁNDEZ-CABRERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Selya and Howard, Circuit Judges.

Stephen Neyman on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Chief, Appellate Division, and Luke Cass, Assistant United States Attorney, on brief for appellee.

November 5, 2010

**SELYA**, **Circuit Judge**.   Defendant-appellant Henry Fernández-Cabrera pleaded guilty to one count of illegal reentry into the United States.   Eschewing the parties' joint recommendation for a sentence at the bottom of the guideline sentencing range (GSR), the district court sentenced the defendant to 33 months in prison.   The defendant now mounts a challenge to both the district court's failure to provide advance notice of its intention not to adopt the joint sentencing recommendation and the adequacy of the court's explanation for its choice of sentence. Discerning no error, we affirm.

In considering a sentencing appeal that trails in the wake of a guilty plea, we glean the relevant facts from the plea agreement, the change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing.   See United States v. Nguyen, 618 F.3d 72, 73 (1st Cir. 2010); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

This case first took shape in June of 2009, when police officers in San Juan detained the defendant after he failed to furnish identification following an investigation of a traffic accident and his admission that he was in the United States illegally.   The officers promptly notified federal Immigration and Customs Enforcement (ICE) agents and ceded jurisdiction to that agency.

ICE's investigation revealed that this was not the defendant's first illegal foray into the United States. In 2000, he had entered the United States illegally and stayed until his arrest two years later on drug and weapons charges. See 21 U.S.C. §§ 812, 841; 18 U.S.C. § 922. In the course of the ensuing criminal proceedings, the defendant admitted to three prior illegal entries into the United States. Each time, he had been apprehended but allowed to depart voluntarily to the Dominican Republic (his homeland).

The government ultimately secured a conviction on the drug and weapons charges in the United States District Court for the Southern District of New York. The court imposed a 21-month prison sentence. The defendant served his time and an immigration judge ordered his removal to the Dominican Republic. In connection with his deportation he received an I-294 Form, which explained that his return to the United States was forbidden without the approval of the Attorney General and that criminal penalties would result should he violate that prohibition.

In defiance of this edict, the defendant returned illegally to the United States in October of 2007. He remained in this country until his 2009 arrest. At that time, the government charged him with illegal reentry after having been deported following his conviction for an aggravated felony. See 8 U.S.C. §§ 1326(a), (b)(2).

The defendant waived indictment, thus qualifying for participation in a "fast-track" plea agreement program.[1] He entered into a plea agreement (the Agreement) with the government and pleaded guilty to a one-count information.

The Agreement placed the defendant's GSR at 30-37 months.[2] It acknowledged that the parties would jointly recommend to the district court "a sentence of imprisonment equal to the lower end of the applicable guideline." The Agreement also contained a waiver-of-appeal provision, which stated that if the district court was to "accept[] the plea agreement and sentence[] the defendant according to the sentencing recommendations contemplated [in the Agreement]," the defendant would be deemed to have surrendered any right to appeal.

At the disposition hearing, the district court abjured the proposed sentence, instead imposing a sentence near the mid-point of the GSR: 33 months. The court explained:

> Defendant has a prior federal criminal conviction for trafficking of firearms and possessing with intent to distribute cocaine . . . . He has admitted to four prior illegal entries into the United States, the present offense being his fifth illegal entry.

---

[1] This early disposition program, adopted in Puerto Rico pursuant to USSG §5K3.1, allows a defendant the benefit of a three-level downward reduction in his offense level in exchange for his waiver of indictment and admission of guilt.

[2] This placement was confirmed by the district court and is not challenged on appeal.

> In order to reflect the seriousness of the offense, to promote respect for the law, and particularly to deter similar conduct by this Defendant in the future, the Court finds that a sentence at mid applicable guideline range is sufficient but not greater than necessary to address these statutory sentencing factors.

The defendant made no contemporaneous objection to this statement (or, for that matter, to any finding made in connection with sentencing).

Following the entry of judgment, the defendant served a timely notice of appeal. In his appeal, he challenges his sentence on the ground that the district court failed to provide either (i) advance notice of its intention to deviate from the jointly recommended sentence or (ii) an adequate explanation of its decision. The government counters that the defendant has waived any right to appeal and that, in all events, the defendant's claims lack force. Because the government's waiver-of-appeal argument is logically antecedent to the defendant's plaints, we start there.

The government's waiver argument need not detain us. A criminal defendant who waives his right to appeal relinquishes a substantial right. Consequently, a waiver-of-appeal provision in a plea agreement should be construed according to its tenor, and any ambiguities should be resolved in favor of allowing the appeal to proceed. See United States v. Acosta-Roman, 549 F.3d 1, 3-4 (1st Cir. 2008); United States v. McCoy, 508 F.3d 74, 77 (1st Cir. 2007); United States v. Teeter, 257 F.3d 14, 23-25 (1st Cir. 2001).

-5-

In the case at hand, the language of the waiver-of-appeal provision is pellucid: the waiver does not attach unless the district court has "sentence[d] the defendant according to the sentencing recommendations contemplated [in the Agreement]." The Agreement contains only a single sentencing recommendation: a joint entreaty that the district court sentence the defendant to a term of imprisonment "equal to the lower end of the applicable guidelines." But, here, the GSR encompasses a span of 30-37 months, yet the district court sentenced the defendant to a 33-month term of immurement. That mid-range sentence was not the low-end sentence "contemplated" in the Agreement.

That ends this aspect of the matter. A waiver-of-appeal provision is enforceable according to its terms. Acosta-Roman, 549 F.3d at 3. The government, however, is not entitled to recast the reach of such a provision after the fact. When the district court chose not to follow the parties' joint sentencing recommendation, the waiver-of-appeal provision, as framed, was relegated to the scrap heap. Consequently, the appeal may proceed.

We turn next to the defendant's claims. We begin with the standard of review. The Supreme Court has directed the courts of appeals to review an appealed sentence for reasonableness. See Gall v. United States, 552 U.S. 38, 46 (2007). This assessment is to be made pursuant to a deferential abuse-of-discretion standard. Id. That approach pertains where, as here, the sentencing court

-6-

has imposed a within-the-range sentence. <u>United States</u> v. <u>Carrasco-De-Jesús</u>, 589 F.3d 22, 26 (1st Cir. 2009); <u>United States</u> v. <u>Jiménez-Beltre</u>, 440 F.3d 514, 517 (1st Cir. 2007) (en banc); <u>United States</u> v. <u>Deppe</u>, 509 F.3d 54, 62 (1st Cir. 2007).

In this context, reasonableness has both substantive and procedural dimensions. The defendant does not challenge the substantive reasonableness of his sentence but, rather, advances two claims of procedural unreasonableness.

The first of these claims is premised on the Supreme Court's decision in <u>Burns</u> v. <u>United States</u>, 501 U.S. 129 (1991). There, the Court held that a defendant must be afforded reasonable notice before a sentencing court may depart upward from the GSR on grounds not specifically flagged in either the PSI Report or some other submission that antedates the disposition hearing.[3] <u>Id.</u> at 138.

The defendant's emphasis on <u>Burns</u> is doubly flawed. For one thing, this emphasis ignores the shifting of the tectonic plates caused by the Court's subsequent decision in <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005). For another thing, honoring this claim would involve an unwarranted expansion of <u>Burns</u>. We explain each of these flaws briefly.

---

[3] Since 2002, this holding has been codified in Federal Rule of Criminal Procedure 32(h). <u>See</u> <u>Irizarry</u> v. <u>United States</u>, 553 U.S. 708, 709-10 (2008).

We begin this explanation with a comment on the effect of Booker. The Burns Court perceived a "special need for notice," Irizarry v. United States, 553 U.S. 708, 713-14 (2008), at a point in time when the federal sentencing guidelines were viewed as mandatory. The Court's later decision in Booker, 543 U.S. at 246, 264-65, undermined that premise. Booker rendered the guidelines advisory. See id. This is important because, under a mandatory guideline regime, the parties could reasonably anticipate judicial adherence to the guidelines and, thus, a sentence within the GSR. See Irizarry, 553 U.S. at 714. Thus, when a sentencing court opted to depart upward without advance notice, a defendant might well be caught unawares. See Burns, 501 U.S. at 138.

Booker changes that dynamic. As previously noted, the holding in Booker made the guidelines advisory. That, in turn, made deviations from the guidelines more readily foreseeable and, thus, made sentences within the GSR less a matter of routine. See United States v. Vega-Santiago, 519 F.3d 1, 4 (1st Cir. 2008) (noting that, post-Booker, the sentencing inquiry "is far more broad, open-ended, and discretionary"). That altered the calculus of reasonable expectations.

Recognizing the salience of this shift, the Supreme Court, in the post-Booker era, has refused to expand the notice requirement announced in Burns beyond the narrow confines of a sentencing departure. See Irizarry, 553 U.S. at 714-15. In that

-8-

regard, the Court has interpreted <u>Booker</u> as defenestrating any argument for an expansion of the <u>Burns</u> principle. <u>See</u> <u>id.</u> at 716. We have echoed this reasoning. <u>See</u> <u>Vega-Santiago</u>, 519 F.3d at 3-4. As matters now stand, the notice contemplated by <u>Burns</u> is necessary only when a sentencing court purposes to depart based on previously unannounced considerations. <u>See</u> Fed. R. Crim. P. 32(h). This case does not fit within that taxonomy.

<u>Booker</u> aside, a <u>Burns</u>-like prophylactic is unnecessary in this case. Here, the court imposed a sentence within the GSR — a GSR agreed to by the parties and limned in the PSI Report. The parties' default expectation should have been that the court would impose a within-the-range sentence, so there was no special need for notice. <u>See</u> <u>United States</u> v. <u>Jackson</u>, 32 F.3d 1101, 1106 (7th Cir. 1994) ("We understand and agree that the district court is not required to give notice of its decision to sentence within the applicable Guideline range on grounds identified in the presentence report. . . ."); <u>United States</u> v. <u>Willis</u>, 997 F.2d 407, 416-17 (8th Cir. 1993) (similar). Moving a sentence up a notch but remaining within the GSR is fundamentally different from departing upwardly sua sponte to a point above the top of the GSR.

In an effort to sabotage this reasoning, the defendant argues that because the Agreement contemplated a specific sentence he had a right to expect, absent notice to the contrary, that the court would impose that sentence. Its failure to do so, he says,

constituted unfair surprise.  This is not a legitimate basis for a claim of prejudicial surprise.  See Irizarry, 553 U.S. at 715-16.  After all,

> [i]n the normal case a competent lawyer . . . will anticipate most of what might occur at the sentencing hearing . . . .  Garden variety considerations of culpability, criminal history, likelihood of re-offense, seriousness of the crime, nature of the conduct and so forth should not generally come as a surprise to trial lawyers who have prepared for sentencing.

Id. at 716 (quoting Vega-Santiago, 519 F.3d at 5); see also United States v. Politano, 522 F.3d 69, 75 (1st Cir. 2008).

We add a coda.  Mechanical rules about when warnings are or are not required do not control in every case.  One would expect a sentencing court to be sensitive to a timely objection based on surprise and a claim that further information needs to be gathered.  But this assumes real surprise — unlikely in this case since recommendations are not always followed.  It also assumes an on-the-spot request for further time and a fairly specific and plausible explanation of what is expected to be gained — and no such request or explanation was made here.  A defendant scarcely can complain about the lack of a warning when there is no reason to believe that a warning, if given, would have made the slightest difference.

The defendant's remaining claim of sentencing error takes the form of a challenge to the adequacy of the court's explanation

-10-

for the mid-range sentence.  This, too, is a claim of procedural unreasonableness, which engenders abuse-of-discretion review.  <u>See</u>, <u>e.q.</u>, <u>Carrasco-De-Jesús</u>, 589 F.3d at 26.

It cannot be gainsaid that a sentencing court must indicate the basis for the sentence imposed.  <u>United States</u> v. <u>Turbides-Leonardo</u>, 468 F.3d 34, 40 (1st Cir. 2006) (citing 18 U.S.C. § 3553(c)).  Withal, pronouncing sentence does not require a district court to be precise to the point of pedantry.  The requirement for explication is less rigid than the defendant suggests:

> While the court ordinarily should identify the main factors upon which it relies, its statement need not be lengthy . . . nor need it dissect every factor made relevant by 18 U.S.C. § 3553 . . . .  Even silence is not necessarily fatal; "a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the presentence report with what the judge did."

<u>Id</u>. at 40-41 (quoting <u>Jiménez-Beltre</u>, 440 F.3d at 519); <u>see</u> <u>also</u> <u>United States</u> v. <u>Arango</u>, 508 F.3d 34, 46 (1st Cir. 2007).  The level of detail required varies depending on the circumstances.  Thus, "sentences that fall inside a properly calculated guideline sentencing range require a lesser degree of explanation than those that fall outside."  <u>Turbides-Leonardo</u>, 468 F.3d at 41 (citing <u>United States</u> v. <u>Smith</u>, 445 F.3d 1, 4 (1st Cir. 2006)).

Viewed against this backdrop, the defendant's claim disintegrates.  The district court observed that the defendant had

entered the United States illegally on five separate occasions and concluded that a mid-range sentence was appropriate to promote respect for the law and to prevent recidivism. That was a sufficient explanation to undergird the court's choice of a 33-month sentence.

The defendant advances two counter-arguments. The first posits that it was impermissible for the court to find facts (such as the number of illegal entries) based on the PSI Report. This argument is jejune. The defendant interposed no objection to the chronicling of these events, and it is settled beyond hope of contradiction that unobjected-to "[f]acts contained in a presentence report ordinarily are considered reliable evidence for sentencing purposes." United States v. Morillo, 8 F.3d 864, 872-73 (1st Cir. 1993); accord United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010). That principle applies here.

The defendant's second counter-argument posits that the court's explanation of the sentence was insufficient to meet the demands of 18 U.S.C. § 3553(c). We do not agree.

Where the record permits a reviewing court to identify both a discrete aspect of an offender's conduct and a connection between that behavior and the aims of sentencing, the sentence is sufficiently explained to pass muster under section 3553(c). United States v. Mangual-Garcia, 505 F.3d 1, 15 (1st Cir. 2007). The explicit reference by the court below to the defendant's

recurring pattern of illegal entries corresponded to this benchmark.

We need go no further.  For the reasons elucidated above, we uphold the defendant's sentence.

**<u>Affirmed</u>**.