**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRIAN KEITH PATE MOSLEY,

    Defendant - Appellant.

No. 17-1232
(D.C. No. 1:16-CR-00386-PAB-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

    For the third time in seven years, the district court convicted Brian Mosley of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Mosley to a 60-month prison term—almost double the sentence that the U.S. Sentencing Guidelines prescribed. Mosley appeals the substantive reasonableness of his sentence. We affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument wouldn't materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

**Background**

One afternoon in late 2016, someone shot at Mosley as he left a store in Denver's Five Points neighborhood. Mosley brandished a handgun, fled the area, and abandoned the gun in a nearby yard. Police found Mosley's gun and discovered his DNA on it. A federal grand jury subsequently indicted Mosley for being a felon in possession of a firearm in violation of § 922(g)(1). Mosley pleaded guilty.

In Mosley's presentence report (PSR), the U.S. Probation Department assigned an offense level of 12 and a criminal history category of V under the Guidelines, yielding a sentencing range of 27 to 33 months in prison. *See* U.S.S.G. § 5A. Neither Mosley nor the government objected to the PSR. But the government asked the district court to depart from the Guidelines and sentence Mosley to 100 months in prison. It argued that an upward departure from the Guidelines' sentencing range was necessary because Mosley had been undeterred by his prior two within-Guidelines sentences for § 922(g)(1) violations and therefore would likely continue to violate § 922(g)(1). Mosley objected.

The government's case for an upward departure focused on Mosley's relationship with Five Points. Mosley grew up in Five Points and joined a gang in the neighborhood when he was 12 years old. Since then, he has been a target of violence in the area. Indeed, Mosley said in his presentence interview that he cannot drive through Five Points without someone trying to shoot him. In fact, he said he's been shot at twice in Five Points since his most recent release from prison in 2015. And a

2

number of Mosley's friends have been fatally shot—two of them in his presence. During one of these attacks, Mosley was shot in the leg.

In light of the violence that follows him around Five Points, Mosley explained that he carries guns for self-protection. He believed he only survived the shooting outside the store because he brandished his gun, which gave him time to flee. At his sentencing hearing, Mosley acknowledged that he should stay away from Five Points. But the government argued that his continual presence in the neighborhood—despite the trouble it has caused him—suggested he'd keep going back.

The district court agreed with the government. It found that Mosley believes he needs to carry a handgun for self-defense when he goes to Five Points. And although the district court explained that Mosley should just stay away from Five Points, it expressed skepticism that he would do so. Therefore, the district court posited that Mosley will likely continue to possess a firearm in violation of § 922(g)(1). And it concluded that a lengthier sentence is needed to keep him from endangering the public. Nevertheless, the district court opined that the government's request for a 100-month sentence was too long, so it sentenced Mosley to 60 months in prison. Mosley argues on appeal that his sentence is substantively unreasonable.

## Analysis

We review the substantive reasonableness of the district court's sentencing decision for abuse of discretion. *United States v. Lopez-Macias*, 661 F.3d 485, 488–89 (10th Cir. 2011). Indeed, the district court rarely has as much discretion as it does when it sentences a criminal defendant. *See United States v. McComb*, 519 F.3d

3

1049, 1053 (10th Cir. 2007) (explaining that district court has wide discretion because "there are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing"). Thus, we will only reverse "if the court 'exceeded the bounds of permissible choice,' given the facts and the applicable law in the case at hand." *Id.* (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).

Two sources instruct district courts' sentencing decisions: 18 U.S.C. § 3553(a) and the Guidelines. Section 3553(a) lists a number of factors that district courts must consider in determining an appropriate sentence. The Guidelines attempt to establish uniformity within the § 3553(a) regime by creating "a system under which a set of inputs specific to a given case (the particular characteristics of the offense and offender) yield[] a predetermined output (a range of months within which the defendant could be sentenced)." *Peugh v. United States*, 569 U.S. 530, 535 (2013).

"[I]n the ordinary case, the [Guidelines'] recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). Accordingly, "district courts must treat the Guidelines as the 'starting point and the initial benchmark.'" *Id.* at 108 (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). "But a district court can vary from the [G]uidelines so long as it does not do so arbitrarily and capriciously." *United States v. Worku*, 800 F.3d 1195, 1208 (10th Cir. 2015). Therefore, a district court may depart from the Guidelines when "genuinely distinguishing factors" demarcate the

case before it from the ordinary case covered by the Guidelines. *United States v. Friedman*, 554 F.3d 1301, 1310 (10th Cir. 2009); *see also Kimbrough*, 552 U.S. at 109 ("[A] district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the "heartland" to which the Commission intends individual Guidelines to apply.'" (quoting *Rita*, 551 U.S. at 351)).

Here, Mosley argues the district court arbitrarily departed from the Guidelines when it sentenced him to 60 months in prison. In other words, he argues that his sentence is unreasonably long in light of the § 3553(a) factors. *See United States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013). But the district court found that Mosley's history and characteristics and the need to protect the public warranted a longer sentence. And Mosley doesn't argue that these were improper considerations. Indeed, both are factors the district court must take into account when weighing a sentence. *See* § 3553(a)(1), (2)(C). Rather, Mosley argues that the district court gave these factors too much weight because (1) the Guidelines already take his criminal history into account; and (2) nothing about his crime posed a particular threat to the public. But neither argument persuades us that his sentence is arbitrary or capricious. *See Worku*, 800 F.3d at 1208.

First, the Guidelines don't necessarily account for the special circumstances of Mosley's history that motivated the district court to sentence him beyond the recommended Guidelines range. The district court wasn't merely concerned with Mosley's past recidivism; rather, it worried that Mosley's prior prison sentences

5

didn't deter him from continuing to violate § 922(g)(1). Thus, the district court concluded that the only way to prevent Mosley from continuing to violate § 922(g)(1) was to keep him in prison. The district court reasonably drew this conclusion in light of Mosley's repeated § 922(g)(1) violations, his self-professed belief that he needs to carry a gun to protect himself, and his apparent inability to separate himself from Five Points.

Second, it's true that Mosley said he only carried the gun for self-defense purposes and the district court appeared to credit this assertion. But as the government argues, even if Mosley doesn't intend to instigate violence, he risks escalating violence and endangering bystanders by carrying a loaded gun in Five Points. Therefore, it was reasonable for the district court to conclude that an above-Guidelines sentence was necessary to protect the public.

The likelihood that Mosley will reoffend and the need to protect the public from future offenses set this case apart from the standard § 922(g)(1) violation. Accordingly, the district court didn't abuse its discretion by granting the government's motion for an above-Guidelines sentence.

## Conclusion

For the reasons stated above, we affirm Mosley's sentence.


Entered for the Court


Nancy L. Moritz
Circuit Judge

6