# United States Court of Appeals
## For the First Circuit

Nos. 14-2026
     14-2079

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID LASSEQUE,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Stahl, and Kayatta,
Circuit Judges.

William T. Murphy for appellant.
Donald C. Lockhart, Assistant United States Attorney, with
whom Peter F. Neronha, United States Attorney, was on brief, for
appellee.

November 18, 2015

**STAHL**, **Circuit Judge**. Following a two-day jury trial, Defendant-Appellant David Lasseque was convicted of aiding and abetting a bank robbery, in violation of 18 U.S.C. § 2113, and conspiring to commit a bank robbery, in violation of 18 U.S.C. § 371. At sentencing, the district court applied a weapon enhancement and an obstruction of justice enhancement, both of which increased the recommended sentencing range. The defendant now appeals. For the reasons stated below, we affirm.

## I. Facts & Background

"As with any challenge to the sufficiency of the evidence following a trial by jury, we recite the facts in the light most favorable to the jury's verdict." United States v. Bayes, 210 F.3d 64, 65-66 (1st Cir. 2000).

David Lasseque ("Lasseque") and Pierre Rheau ("Rheau") lived one floor apart in the same building in Providence, Rhode Island. On the afternoon of July 12, 2013, Rheau asked Lasseque to drive him to Barrington, Rhode Island. Lasseque agreed and drove Rheau in a brown Hyundai rented the day before by Rheau's second cousin.

In Barrington, Rheau, wearing a baseball cap, a black cloth around his face, dark sunglasses, latex gloves, and a pillow under his clothes to make him seem heavier, entered a

- 2 -

local branch office of Bank of America. Brandishing a black gun, he demanded money from the tellers, who quickly obliged. Rheau exited the bank about one minute later and got back in the Hyundai driven by Lasseque. Local police officers quickly were dispatched to the crime scene following a report of the robbery by the bank tellers.

About a mile away from the bank, a police officer saw a driver that he believed fit the description of the robber approaching from the direction of the bank. Noticing that he was speeding and changing lanes without signaling, the officer pulled Lasseque over. As the police officer got out of the cruiser and approached the Hyundai, Lasseque sped off.

Lasseque led officers on a lengthy high-speed chase that only terminated when his vehicle collided with a police cruiser. After the crash, Lasseque immediately exited the car and began to flee on foot. As Lasseque attempted to scale a backyard fence, two officers pulled him down. Lasseque initially struggled with the officers and refused to place his hands behind his back, but finally relented and was cuffed.

Rheau remained in the Hyundai after it crashed. Upon a search of the vehicle, officers found the money stolen from the bank, the gun, and Rheau's robbery attire. After

indictment, Rheau eventually pled guilty to two counts: armed bank robbery and conspiracy to commit a bank robbery. At the plea hearing, Rheau admitted that he and Lasseque had agreed to rob the bank, and that he executed the robbery with Lasseque serving as the getaway driver.

Although Lasseque waived his Miranda rights the morning after the robbery and agreed to speak with an investigating officer, when questioned, Lasseque "smiled, joked, giggled, and was non-responsive." Lasseque proceeded to trial on two counts: aiding and abetting an armed bank robbery and conspiracy to commit a bank robbery.

At trial, Lasseque testified that, on the afternoon of July 12, 2013, he agreed to drive Rheau to his girlfriend's house in Barrington so that he could retrieve a few things. Lasseque claimed that once Rheau exited the vehicle, he fell asleep. According to Lasseque, he awoke when Rheau got back in the car and demanded that Lasseque drive away quickly because Rheau did not want his girlfriend "to see what kind of car he jumped in." Lasseque testified that after they were pulled over by the police, Rheau revealed he had a gun. Fearing that the police would shoot him because of the gun, Lasseque sped off as the police officer was approaching the car. Lasseque denied

having seen Rheau's disguise prior to the robbery or having any prior knowledge of the robbery or the gun.

At the close of the government's case, Lasseque moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Lasseque argued that the government had failed to provide sufficient evidence to show that there was an agreement between Rheau and himself to rob the bank, that he physically participated in the robbery in any way, or that he had the requisite intent necessary to support either charge. The district court rejected Lasseque's motion. The jury found Lasseque not guilty of aiding and abetting an armed bank robbery, but convicted him on the lesser-included count of aiding and abetting a bank robbery and conspiring to commit a bank robbery.

At sentencing, Lasseque lodged a number of objections to the Presentence Investigation Report ("PSR"), only two of which are at issue on appeal. First, Lasseque objected to the application of a three-point weapon enhancement pursuant to § 2B3.1(b)(2) of the United States Sentencing Guidelines Manual ("U.S.S.G."). Second, Lasseque objected to the application of a two-point obstruction of justice enhancement under U.S.S.G.

§ 3C1.1.   The district court denied both objections and sentenced Lasseque to a term of incarceration of 140 months.

## II.  Analysis

On appeal, Lasseque contends that the district court erred in denying his Rule 29 motion for judgment of acquittal and further argues that, at sentencing, the court erred in imposing the weapon and obstruction of justice enhancements.  We address each contention in turn.

A.   Motion for Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29, a defendant may move for the court to enter a judgment of acquittal after the government closes its evidence on the ground that the evidence is insufficient to sustain a conviction.  The denial of that motion we review de novo.  United States v. Trinidad-Acosta, 773 F.3d 298, 310 (1st Cir. 2014).  On review, we examine the evidence "in the light most favorable to the verdict," asking "whether a rational jury could find guilt beyond a reasonable doubt."  United States v. Burgos-Montes, 786 F.3d 92, 112 (1st Cir. 2015).  The scope of our review accords due deference to those properly charged with sifting and weighing the facts, informed by the credibility cues of the witnesses and the full context of the trial.  Our job is to

monitor the boundaries of reasonable fact-finding, not to engage in it ourselves.  United States v. Davila-Nieves, 670 F.3d 1, 7 (1st Cir. 2012) (stating that, in reviewing the denial of a motion for acquittal, "we do not weigh competing evidence; rather, we merely verify that some evidence adequately supports the jury's verdict").  As such, Lasseque's Rule 29 challenge "face[s] an uphill battle on appeal."  United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008) (quoting United States v. O'Shea, 426 F.3d 475, 479 (1st Cir. 2005)).

Lasseque argues that there was insufficient evidence to show that he knowingly aided and abetted Rheau in committing the bank robbery.  To prevail on its theory of accomplice liability, the government had to prove that: (1) Rheau committed the substantive acts of the bank robbery; and (2) Lasseque "became associated with the endeavor and took part in it, intending to ensure its success."  United States v. Spinney, 65 F.3d 231, 235 (1st Cir. 1995).  As Rheau's guilt is undisputed, our inquiry necessarily focuses on the second element of this recitation, and whether the government offered sufficient evidence that Lasseque took an affirmative act in furtherance of the bank robbery with the intent to facilitate its commission. See Rosemond v. United States, 134 S. Ct. 1240, 1245 (2014).

Upon reviewing the record, we agree with the determination of the district court that the government provided sufficient evidence to enable the jury to find Lasseque guilty of the charged offense. Because the robbery took place during daylight hours in a commercial district with heavy pedestrian and vehicular traffic, it would be quite reasonable to infer that Rheau donned his unconventional apparel, including latex gloves and a pillow under his clothes, in the car before being dropped off. This suggests that Lasseque was well aware of the plot soon to unfold.

The alternative, of course, is that Rheau acquired this mélange of items elsewhere after being dropped off by Lasseque and then either assembled his disguise at the foot of the bank or meandered his way through town sporting his full ensemble. The jury need not surrender to such speculation. The government must prove the elements of the crime beyond a <u>reasonable</u> doubt, not beyond <u>all</u> doubt.

In addition, the jury was well within reason to find that the nature and extent of Lasseque's elusion of authorities following the robbery belied the justification he offered at trial. Here, Lasseque engaged in a lengthy and dangerous high-speed chase, culminating in a collision with a police cruiser,

an attempt to flee by foot, and a struggle with the arresting officers. The jury could quite easily find that this form of flight was "a particularly eloquent reflection of a guilty mind," rather than the panicked impulse of an innocent heart. United States v. Martinez, 922 F.2d 914, 923 (1st Cir. 1991).

Finally, Lasseque's alternative explanation at trial is undercut by his failure to offer it after waiving his Miranda rights in his post-arrest interview. All of this evidence is probative of Lasseque's intent and was placed before the jury by the government.

In addition to reinforcing Lasseque's foreknowledge of the plan, there can be little doubt that Lasseque's evasive exploits constituted an affirmative act in furtherance of the robbery. It is well settled that a getaway driver aids and abets a robbery. See Rosemond, 134 S. Ct. at 1249. A bank robbery would hardly be effective if one could not successfully abscond with the fruits of the crime.

Lasseque seems to suffer under the misconception that the government had to put forth direct evidence of each element in order to prevail. "Contrary to appellant's insinuation, the criminal law does not place a special premium on direct evidence. . . . As long as the evidence taken in its entirety

supports a judgment of conviction, it need not rule out every other reasonable hypothesis of innocence." United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994).

The direct and circumstantial evidence found in the record is more than sufficient to support the jury's findings. For this reason, we conclude that the lower court did not err in denying Lasseque's motion for a judgment of acquittal.

B.   Sentencing Enhancements

Lasseque also appeals the lower court's application of a three-point weapon enhancement and a two-point obstruction of justice enhancement pursuant to the sentencing guidelines. Where the moving party raises an objection below, sentencing determinations are reviewed for abuse of discretion, examining the district court's factual findings for clear error and its interpretations of the guidelines de novo. United States v. Carpenter, 781 F.3d 599, 608 (1st Cir. 2015). Where the moving party fails to raise an objection below, review is for plain error. United States v. Reda, 787 F.3d 625, 630 (1st Cir. 2015). Under a plain error review, the objecting party bears the burden of demonstrating: "(1) that an error occurred; (2) which was clear or obvious; and which not only; (3) affected the defendant's substantial rights, but also; (4) seriously impaired

- 10 -

the fairness, integrity, or public reputation of judicial proceedings." United States v. Combs, 555 F.3d 60, 63 (1st Cir. 2009) (quoting United States v. Moran, 393 F.3d 1, 13 (1st Cir. 2004)).

In the proceedings below, Lasseque objected to both enhancements, but on grounds different than those raised on appeal. In this case, however, the applicable standard of review is of little import, for we can find no error, plain or otherwise, in the lower court's findings or reasoning.

First, we examine the court's application of the weapon enhancement in calculating the proper sentencing guidelines range. Under U.S.S.G. § 2B3.1(b)(2), the offense level receives a three-point increase "if a dangerous weapon was brandished or possessed" during the commission of the offense. The parties agree that the proper inquiry is whether the district court could find, by a preponderance of the evidence, that it was reasonably foreseeable to Lasseque that Rheau would brandish or possess a weapon during the robbery. See United States v. Matthews, 749 F.3d 99, 105 (1st Cir. 2014).

Lasseque alleges that he had no knowledge that Rheau was going to use a gun during the robbery, and that he first became aware of the gun when their vehicle was pulled over.

Even if we were to accept this proposition at face value, however, it would do little to upset the enhancement applied below. The question is not whether Lasseque had actual knowledge of the gun prior to the robbery, but whether he knew of the impending robbery and whether it was reasonably foreseeable that Rheau would possess or brandish a weapon during its commission. See U.S.S.G. § 1B1.3(a)(1)(B).

We have already concluded that the government laid out sufficient evidence to find that Lasseque was aware of the "salient details of the plot." Spinney, 65 F.3d at 237. The only question, then, is whether it was reasonably foreseeable that the commission of a bank robbery in broad daylight would entail the use of a weapon. The answer is in the asking. "[N]ot even the most sanguine criminal would expect clear sailing without some menace in the wind." Id. We have stated before that guns are often "tools of the trade" when it comes to certain offenses, and that an awareness of the general plan is sufficient to infer knowledge that weapons would be used to carry that plan through to completion. See United States v. Fermin, 771 F.3d 71, 83 (1st Cir. 2014); United States v. DeMasi, 40 F.3d 1306, 1316 (1st Cir. 1994). Absent extenuating circumstances, the "possession of a gun . . . is virtually

essential" in perpetrating a bank robbery.  United States v. Powell, 929 F.2d 724, 727 (D.C. Cir. 1991).

In sum, the district court did not err in finding it reasonably foreseeable that Rheau would possess or brandish a weapon in the course of the crime.  We decline to disturb the lower court's sensible judgment on this point.

Next, we examine the court's application of the obstruction of justice enhancement.  Under U.S.S.G. § 3C1.1, a two-level enhancement is appropriate if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing" of the conviction.  Pertinent conduct includes "providing materially false information to a judge or magistrate judge."  U.S.S.G. § 3C1.1 cmt. n.4. Providing false information to a judge in the course of a bail hearing can serve as a basis for the obstruction of justice enhancement.  United States v. Greig, 717 F.3d 212, 221-22 (1st Cir. 2013).

The key facts underlying the enhancement are undisputed.  About two months after the indictment, Lasseque obtained an unsworn affidavit from Rheau dated October 26, 2013. The affidavit stated that Lasseque was unaware of the plan to

rob the bank.  As trial approached, Lasseque moved for bail.  At the bail hearing, defense counsel offered various exhibits and alluded to the affidavit, but did not seek its admission at that point.  The magistrate judge denied the bail motion.  Just moments after the ruling, defense counsel moved for reconsideration based on the affidavit, which was then put forth and marked as Exhibit D.  Before reading the affidavit, the magistrate judge asked defense counsel:  "So, your purpose in presenting this is to show that the weight of the evidence against the defendant isn't as strong as I had concluded because he's been exonerated?"  Counsel replied:  "Yes, your honor."  The judge read the affidavit, summarized its contents, and heard argument concerning its import.  The judge then reaffirmed his earlier ruling and denied bail.

About two weeks later, Rheau pled guilty to both counts of the indictment, stipulating in his written plea agreement and in sworn admissions during the plea colloquy that he and Lasseque had conspired to rob the bank and that Lasseque had served as the getaway driver.  Although Rheau did not explicitly disavow the affidavit, his sworn statements were incompatible with its contents and Rheau's counsel represented to the court that "if Rheau was called to testify, he would

testify that he was forced or coerced into making that statement and that it's not true."

At sentencing, the district court found that an obstruction of justice enhancement was warranted because Lasseque had used the affidavit in an attempt to influence the bail decision and because the affidavit was "clearly false" based on Rheau's admissions and the jury's finding that Lasseque participated in the conspiracy.

Lasseque demurs. He first notes "the great value of adversarial cross-examination in determining who is telling the truth when narratives differ," and then claims that the district court failed to find that Lasseque willfully sought to obstruct justice. Both contentions fail.

First, we may quickly dispense with Lasseque's half-hearted claim of procedural error based on a lack of cross-examination. Despite the critical importance of strict evidentiary procedural limitations when ascertaining a defendant's guilt, sentencing judges have, since colonial times, "exercise[d] a wide discretion in the sources and types of evidence used . . . in determining the kind and extent of punishment to be imposed." Williams v. People of State of N.Y., 337 U.S. 241, 246 (1949). "[T]he sentencing court may rely upon

virtually any dependable information, including statements which have not been subjected to the crucible of cross-examination and information appearing in a presentence report." United States v. Doe, 741 F.3d 217, 236 (1st Cir. 2013) (quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)) (quotation marks omitted).

Second, Lasseque argues that the district court did not find that he acted willfully in presenting the Rheau affidavit to the magistrate judge. Lasseque claims that the court expressed uncertainty over his state of mind and failed to sufficiently articulate the basis for its decision. Lasseque points to a passage in the hearing transcript, wherein the sentencing judge states:

> I know you maintain your -- I think you maintain your innocence here and the jury has found you guilty. I think your claims that you didn't know what was going on here [are] completely incredible. There's no -- I don't know if you've convinced yourself of that, but it's plain to me that you knew what was going on, you were part of this conspiracy to rob the bank and then you engaged in this crazy getaway drive . . . and endangered a lot of people in doing that. (emphasis added).

Lasseque latches onto this statement and argues that the court's uncertainty over his state of mind precludes a finding of

willfulness. Although "inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and thus, not . . . reflect a willful attempt to obstruct justice," U.S.S.G. § 3C1.1 cmt. n.2, defense counsel's adroit use of the transcript founders when the judge's remark is placed back in context.

The court's fleeting comment was not made during its discussion of the obstruction enhancement, but rather during its general ruminations at the conclusion of the sentencing hearing after all objections had been ruled upon. Assuming the judge's casual remark reflected an actual uncertainty about Lasseque's mental state at the time of sentencing, it still would not reflect an uncertainty about Lasseque's mental state at the time of the trial, the time of the offense, or the time of the bail hearing at issue. In fact, any suggestion that Lasseque believed himself to be innocent all along is explicitly foreclosed by the judge in the same breath: "I don't know if you've convinced yourself of [your innocence], <u>but it's plain to me that you knew what was going on</u> . . . ." (emphasis added). As such, even if Lasseque's argument is on the right track, it appears to be on the wrong train. Nothing about the court's

- 17 -

passing observation precludes a finding that Lasseque acted willfully at the time of the bail hearing.

Lasseque further argues that the court failed to sufficiently articulate its finding of willfulness. Lasseque points to the Eighth Circuit's decision in United States v. Ransom, where the lower court had applied an obstruction of justice enhancement because it had determined that the grand jury testimony of the defendant was "fraught with lies." 990 F.2d 1011, 1014 (8th Cir. 1993). The Eighth Circuit held that the court's finding was insufficient because the judge had "failed to point specifically to any of these alleged acts of perjury." Id. In fact, the lower court had expressly acknowledged that it was "not familiar with the [grand jury] transcript" at issue. Id. The Eighth Circuit found the lower court's lack of familiarity with the transcript "especially important . . . given that no trial was conducted which would have provided the judge with an opportunity to gauge the defendant's actions and testimony while on the witness stand. The Court's only opportunity to observe the defendant occurred at sentencing." Id.

The defendant's reliance upon Ransom is misplaced. Unlike in Ransom, the court here pointed to a specific document;

reflected upon the sources of evidence that rendered the document false; and discussed the context in which the document was offered, the purpose for which it was offered, and the document's intended effect. Moreover, unlike in Ransom, the sentencing judge in this case presided over the defendant's trial and had ample opportunity to gauge the defendant's credibility. Ransom is simply inapposite based on this record.

In essence, Lasseque's argument boils down to this: the sentencing judge did not explicitly recite the word "willful" in relaying his rationale for the obstruction enhancement. Yet, we do not demand that judges, in explaining the bases for their rulings, be "precise to the point of pedantry." United States v. Fernández–Cabrera, 625 F.3d 48, 53 (1st Cir. 2010). The sentencing judge is not a checklist in a robe, and we will not upset a court's careful reasoning and considered judgment in order to quibble with the verbal formulation employed. The sentencing judge found that the assertions in the Rheau letter were "clearly false" and that Lasseque "attempted to use them to obstruct the judicial process" by "try[ing] to influence [the magistrate judge's] bail decision." This explanation makes the judge's willfulness

finding abundantly, albeit implicitly, clear. We need dwell upon the question no further.

### III. Conclusion

For the foregoing reasons, the judgment is AFFIRMED.