# United States Court of Appeals
## For the First Circuit

No. 16-2475

UNITED STATES,

Appellee,

v.

NEIL WEST, SR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, Chief U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

Jonathan M. Goodman, with whom Troubh Heisler, PA, was on brief for appellant.
Renée M. Bunker, Assistant United States Attorney, Appellate Chief, District of Maine, with whom Richard W. Murphy, Acting United States Attorney, was on brief for appellee.

December 15, 2017

**BARRON**, **Circuit Judge**.  Neil West was convicted of four federal offenses in connection with his role in the commission of two bank robberies that occurred in Maine.  He received a prison sentence of 175 months.  He now contends that all four convictions must be vacated due to errors that the District Court made at trial, although he only makes substantive arguments regarding two of those convictions.  We affirm.

## I.

On November 30, 2016, in the United States District Court for the District of Maine, West was convicted of two counts of aiding and abetting bank robbery, in violation of 18 U.S.C. § 2113(a), (d), and two counts of conspiracy to commit bank robbery, in violation of 18 U.S.C. §§ 371 and 2113(a).  The four convictions stemmed from two separate robberies, with West having been convicted of both aiding and abetting bank robbery and conspiring to commit bank robbery in connection with each of these robberies.

The first of the robberies was of a credit union in Portland, Maine on September 4, 2015.  West allegedly acted as the driver to and from that robbery.  The other robbery was of a TD Bank in Lewiston, Maine on September 12, 2015, where West allegedly helped plan the robbery and, again, acted as the driver to and from the robbery.

In his briefing on appeal, West only challenges rulings by the District Court that pertain to his convictions for the

- 2 -

offenses relating to the TD Bank robbery.  Accordingly, we focus on his challenges to those two convictions, as he makes no argument as to why the two convictions relating to the robbery of the credit union may not stand.

**II.**

We begin with West's contention that these two convictions must be vacated due to the District Court's admission -- over West's objection -- of an approximately 8-minute portion of a 30-minute video that law enforcement took from the perspective of the police officer who pulled in behind West as he was driving a minivan roughly 30 minutes after the TD Bank robbery had occurred.  In its unredacted form, that video runs from the point at which the police officer pulled in behind the van all the way up through the point at which the van came to a stop, West exited the van, and West attempted to run away from the scene.

Prior to trial, West had moved to exclude the entirety of the video from being entered into evidence.  West did so pursuant to Federal Rule of Evidence 403, which provides that "court[s] may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

The District Court orally granted in part and denied in part West's motion.  The District Court ordered that significant portions of the video be "redact[ed]" in order to ensure that the video would not provoke an unfairly prejudicial "emotional

- 3 -

response" from jurors based on what the video showed -- namely West driving at "dizzying speeds" through residential neighborhoods, "zipping in and out" among cyclists and pedestrians. But, the District Court determined, other portions of the video could be shown to the jury -- namely the portion that runs from the point in the video that shows the police officer pulling in behind the van to the point in the video that shows the van speeding off as well as the portion of the video that runs from the point in the video that shows the van pulling off the paved road to the point in the video that shows the police arresting the defendant in front of the police cruiser.

A week after the District Court's order, West moved for reconsideration of the District Court's ruling. The District Court denied the motion for reconsideration a week before trial. In doing so, the District Court ruled that under United States v. Lasseque, 806 F.3d 618 (1st Cir. 2015), the flight from law enforcement depicted in the video was "part and parcel of the crime alleged" -- namely aiding and abetting a bank robbery and conspiracy to commit bank robbery. Thus, the District Court concluded that the redacted version of the video was highly probative. In addition, the District Court, relying on United States v. Wallace, 461 F.3d 15, 25-26 (1st Cir. 2006), found in the alternative that the redacted version of the video was probative because the government had proffered "sufficient

- 4 -

extrinsic evidence of guilt to support the inference that the flight is also probative of consciousness of guilt."

Before the trial, however, the District Court reviewed what the government had redacted from the video and instructed the prosecutor to "redact more of it." The result was that the 30-minute chase video, which the District Court already had ordered to be redacted once, was ordered to be redacted further so that, in the end, only an 8-minute excerpt of the video would be played for the jury during trial. The District Court also instructed the government not to elicit testimony regarding what happened in redacted portions of the video from the law enforcement officer who would be called as a witness to narrate the video. Finally, the District Court gave a specific cautionary instruction to the jury that it "should consider that there may be reasons for Mr. West's actions that are fully consistent with being innocent of the charges in the indictment."

West argues that the redacted version of the video, like the video as a whole, is not probative of his guilt because the record provides an insufficient basis for linking his flight from law enforcement to his role in the bank robbery, which occurred 30 minutes before the chase began. West also argues that even if there were a sufficient basis for linking his flight from the police to his commission of the crime, the redacted version of the

video was still unduly prejudicial, given its length and what it depicted. We disagree.

Wallace, which the District Court relied on in finding that the video was probative, itself relied on United States v. Benedetti, 433 F.3d 111 (1st Cir. 2005). There, we explained that, although "[f]light evidence is controversial and must be handled with care," with an "adequate factual predicate, . . . evidence of a criminal defendant's flight is generally thought to be probative of his or her consciousness of guilt." Id. at 116. Thus, Benedetti makes clear that "[a]s a precursor to admissibility, the government must present sufficient extrinsic evidence of guilt to support an inference that [the] defendant's flight was not merely an episode of normal travel but, rather, the product of a guilty conscience related to the crime alleged." Id. The aim is to ensure that "a jury does not infer guilt based solely on a defendant's meanderings." Id.

In so concluding, however, we explained that the government must present only "enough extrinsic evidence to furnish circumstantial badges of guilt." Id. at 117. We have also noted that "[a] district court is afforded considerable leeway when determining whether evidence of a defendant's flight is accompanied by a sufficient factual predicate." Id. at 116. As a result, we review "such decisions only for abuse of discretion." Id.

Here, the District Court reasonably found that the government offered sufficient extrinsic evidence to support the inference that West's flight, as depicted in the redacted video, was probative of West's consciousness of guilt. This evidence included the testimony of a cooperating witness, Joseph Richards, who the government contended had been West's co-conspirator in the bank robbery. Richards testified at trial that he had robbed the TD Bank and that West had helped in carrying out the robbery by driving a vehicle both to and from the scene of the crime. Richards also testified that West was involved in the planning of the robbery by looking for a bank that was accessible to a highway and not so out in the open.

Moreover, Richards in his testimony specifically identified the type of vehicle that West was driving in assisting with the robbery, as well as the location where West allegedly waited in the vehicle while the robbery occurred. And Richards also in that testimony identified that vehicle as a blue minivan that matched the minivan depicted in the video.

Richards' testimony regarding West's role as the get-away driver is exactly the sort of extrinsic evidence that satisfies Benedetti. His testimony provided a basis for concluding that West was not engaged merely in "an episode of normal travel" unconnected to the underlying offenses at issue. Id. His testimony did so by linking West's role in driving the vehicle

depicted in the video to the underlying robbery, thereby giving rise to an inference that, in seeking to elude the police during the chase, West was conscious of his guilt for having been involved in the robbery. See United States v. Alcantara, 837 F.3d 102, 109 (1st Cir. 2016) (relying on coconspirators' testimony as extrinsic evidence).

Richards' testimony suffices to distinguish this case from the one that West relies on most heavily, United States v. Doe, which is an unreported case from the District of Maine. 2011 WL 5983034 (D. Me. Nov. 29, 2011). In Doe, the District Court found that the government failed to present sufficient evidence to support an inference that the defendant's flight was related to the crime alleged, and the district court therefore excluded the flight evidence. Id. at *2. But, even assuming that the evidence in Doe did not suffice to render the flight evidence at issue in that case probative, there was no extrinsic evidence in Doe specifically linking the flight itself to the underlying crime as there is here in consequence of Richards' testimony.

Of course, even when there is sufficient extrinsic evidence to link the flight evidence to the defendant's consciousness of guilt, the flight evidence's "admissibility is not automatic." Benedetti, 433 F.3d at 116. Such evidence must still pass the Rule 403 balancing test to ensure that, probative though the flight evidence may be, its admission would not be

unduly prejudicial.  See Fed. R. Evid. 403.  And West did argue below that, wholly apart from the issue of whether extrinsic evidence sufficed to link the evidence of West's flight to West's involvement in the underlying crime, the flight video (even in its redacted form) was still unduly prejudicial.

But, a district court is afforded wide "latitude in determining whether the evidence passes the Rule 403 balancing test," such that we review its ruling on such a matter only for abuse of discretion.  Benedetti, 433 F.3d at 117.  Moreover, cautionary instructions can further minimize the risk of unfair prejudice.  Daigle v. Me. Med. Ctr., Inc., 14 F.3d 684, 690 (1st Cir. 1994) (holding that cautionary jury instruction minimized possible prejudicial impact of documentary exhibits).

Here, the District Court found there to be no risk that the probative value of the video would be substantially outweighed by unfair prejudice to West only after the District Court had carefully reviewed the video and required especially provocative chunks of it to be removed in order to ensure that the video would not provoke an "emotional response" from the jury.  In addition, the District Court instructed the government's witness, who narrated the video at trial, not to reference the portions of the video that had been ordered redacted.  And, finally, the District Court gave a specific cautionary instruction to the jury that it "should consider that there may be reasons for Mr. West's actions

that are fully consistent with being innocent of the charges in the indictment."

Thus, while West contends that the video even in its redacted form should have been excluded, we see no basis for concluding that the District Court abused its discretion in ruling as it did, given the District Court's findings regarding the probative nature of the flight evidence and the steps that the District Court took to mitigate the risk of unfair prejudice. Accordingly, we reject West's first ground for challenging his convictions.

## III.

West also argues that the District Court abused its discretion when it ruled that two statements that West made to police in an interview following his arrest for his role in the TD Bank robbery could be introduced into evidence only if the government could introduce other statements that West made to the police at that time. West contends that the District Court abused its discretion in making this conditional offer for the following reason: The statements that the government would be permitted to introduce concerned a prior robbery-related conviction of West's and thus would impermissibly prejudice the jury against him. But, West appears to premise his challenge to the District Court's conditional evidentiary ruling on his underlying contention that the District Court erred in deeming the statements that West sought

- 10 -

to introduce to be inadmissible hearsay.  And, as that premise is mistaken, his challenge necessarily fails.[1]

The two statements from West's interview with the police following his arrest in connection with the TD Bank robbery that West wished to introduce as admissible hearsay were (1) his statement that the interviewing officer should review the security footage from the motel where he had been staying the night before the robbery, as that footage would prove he was at the motel during the robbery; and (2) his statement to the police, after being told that he had been identified by witnesses as one of the robbers, to bring those witnesses to identify him as they would not be able to do so.  West argues that, contrary to the District Court's ruling, each of these statements falls under the state-of-mind exception to the rule against the admission of hearsay.  Fed. R. Evid. 803(3) (providing that out of court statements concerning "then-existing mental, emotional, or physical condition" may be offered regardless of whether the declarant is available as a witness).

But, the state-of-mind exception to the hearsay rule does not apply to "a statement of memory or belief to prove the

---

[1] In his briefing, West makes no argument that, even if the statements he wished to introduce were in fact hearsay, he was harmed in any way by the conditional offer made by the District Court.  Nor did West explain how, in that event, he could win when asked to do so at oral argument.  Therefore, we have no reason to address West's contention that the prior bad act evidence was not admissible under Federal Rule of Evidence 404(b).

fact remembered or believed." Id. Indeed, the Advisory Committee Notes explain that this exception to the state-of-mind exception "is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." Fed. R. Evid. 803(3) advisory committee's note to 1972 proposed rules.

Thus, the state-of-mind exception does not encompass the statements in question. As the government rightly points out, while West contends that he sought to introduce each of these statements solely to show that he had an innocent state of mind at the time that he made them, the inference that West had an innocent state of mind at that time could be drawn by the jury only if the jury found that the statements were true. See United States v. Cianci, 378 F.3d 71, 106 (1st Cir. 2004) (finding that the state-of-mind exception did not apply where the evidence offered was to be used to prove the truth of the assertion). As one of our sister circuits explained in dealing with an analogous case,

> [w]hat would be relevant is that [defendant] was in truth in the wrong place at the wrong time -- not that [second defendant] thought so. Hence the statement is irrelevant unless it was true, in which case it would be hearsay, and inadmissible under any of the exceptions in Fed. R. Evid. 803 and 804. Similarly, the declarant's state of mind and 'pattern of verbal behavior' were irrelevant to any issue in the case and cannot be invoked like a mantra to circumvent a hearsay objection.

United States v. Harwood, 998 F.2d 91, 97-98 (2d Cir. 1993).

In consequence, West fails to establish the premise on which his challenge to the District Court's conditional evidentiary ruling rests -- namely, that the statements that West wished to introduce were themselves admissible. We therefore reject his contention that the District Court abused its discretion.

**IV.**

The judgment of the District Court is **affirmed**.